**In re SKRHA.**

[Cite as *In re Skrha* (1994), 98 Ohio App.3d 487.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 65226, 65231, 65330 and 65331.

Decided Nov. 14, 1994.

488

*Belinger, Kaselak & Wolkin* and *Steven E. Wolkin,* for appellant Carl C. Monastra.

*John H. Lawson,* for appellant Nancy M. Russo.

*Geoffrey M. Schumer,* for appellant Denise L. Skrha.

*Wolf & Akers* and *Marshall Wolf,* for appellee Joseph Skrha.

---

JAMES D. SWEENEY, Presiding Judge.

This opinion arises from four cases consolidated on appeal from decisions rendered by the Court of Common Pleas, Juvenile Division, concerning two minor children, Katharine and Rebecca Skrha. The Juvenile Court case numbers are 9300427 and 9300428. Appellate case Nos. 65226 and 65231 arise from the court's decision which dismissed an application for custody of the children. Appellate case Nos. 65330 and 65331 arise from the court's decision which removed an attorney from participation in sanction hearings. The following facts are pertinent to the appeal.

Denise and Joseph Skrha were married in Cuyahoga County, and moved to Alaska in 1984, where Joseph Skrha has practiced law since 1985. The couple

have two children, Katharine, born July 3, 1986, and Rebecca, born November 20, 1990. The Skrha family lived continuously in Alaska, but returned to Cuyahoga County every Christmas to visit their families.

During this yearly visit in 1992–1993, Mrs. Skrha apparently decided not to return to Alaska. On January 13, 1993, Mrs. Skrha filed various pleadings in juvenile court seeking custody of her daughters. Mrs. Skrha filed an application for custody, an affidavit containing parenting proceeding information and application for Title IV–D services, an emergency motion for temporary possession *ex parte,* a motion for a temporary restraining order, and a motion to designate a person to serve process.

Attached to the motion for application of custody is the affidavit of Mrs. Skrha. She affirmed:

"Affiant further states that she is the natural biological parents [*sic*] of Katharine Elizabeth, age 6 and Rebecca Ann, age 2;

"Affiant further states that the Defendant has threatened to remove the minor children from the jurisdiction of this Court, out of state, which would not be within the best interest of the minor children;

"Affiant further states that she firmly believes that the Defendant is addicted to the drug Methadone, which he takes on a regular daily basis for an alleged chronic ear infection and that said drug is not a conventional form of treatment for for [*sic*] this ailment;

"Affiant further states that the Defendant acts in an erratic manner and that his faculties are impaired while on said medication, and that the emotional, physical and mental well-being of said children are at risk while in the possession of the Defendant."

Attached to the emergency motion for temporary possession, *ex parte,* is the following affidavit:

"Affiant further states that she is in fear that Defendant may attempt to remove the minor children, Katharine Elizabeth and Rebecca Ann, from the jurisdiction of the Court to places unknown and that said move would not be in the best interests of the minor children;

"Affiant further states that there exists a genuine concern for the safety of the parties' minor children, while in the possession of the Defendant due to the Defendant's consumption of the drug methadone, as well as the effect of the minor children's physical and/or emotional well-being while with the Defendant, and hence it would be within the minor children's best interests to grant this Affiant temporary possession of same during the pendency of said Application for Custody."

The trial judge, on January 13, 1993, granted the emergency motion for temporary possession, *ex parte,* the temporary restraining order, and the motion to designate a process server. Mr. Skrha and his eldest daughter were intercepted at Cleveland Hopkins Airport as they were about to board an airplane for home.

On January 15, 1993, Mrs. Skrha filed motions for an appointment of a guardian *ad litem* and for a psychological examination of Mr. Skrha. Mrs. Skrha was represented by attorneys Carl Monastra and Nancy Russo.

On January 15, 1993, Mr. Skrha commenced an action in the Superior Court of Alaska, Third Judicial District at Anchorage, seeking joint legal custody and shared physical custody of the children.

On January 19, 1993, Mr. Skrha filed a motion to dismiss Mrs. Skrha's application for custody and to dissolve the restraining order. He also requested expenses and attorney fees. Mr. Skrha was represented by attorney Marshall Wolf. Attached to the motion to dismiss is the lengthy affidavit of Mr. Skrha. He affirms that Alaska is the home state of the children, that Alaska has closer connections with each child, that substantial evidence concerning each child's present and future care, protection, training and personal relationships is more readily available in Alaska; that Katharine is and has been enrolled in school in Alaska; that Katharine brought schoolwork with her to Cleveland over the Christmas holiday; that the physicians and medical records of the children are in Alaska; that the children's friends, child care providers, ice skating lessons, school functions, church and pets are in Alaska; that the only time the children were absent from the state was for family visits; that each child is a registered permanent resident of Alaska and receives an annual state of Alaska dividend check; that both parents are registered residents of Alaska; that both parents are registered to vote in Alaska; that their automobiles are registered there; that their driver's licenses are from Alaska; and that federal taxes are filed with Alaska designated as the residence.

Mr. Skrha also affirmed that he never threatened to remove the children to places unknown and that, in fact, Mrs. Skrha agreed that Katharine should return to Alaska to resume school. He stated that the decision was a joint decision, and representations to the contrary made to the court were false and fraudulent. Mr. Skrha also affirmed that he never received service of process on the custody action before the juvenile court. Mr. Skrha requested attorney fees and travel expenses as allowed under R.C. 3109.25(G) for bringing an action in a clearly inappropriate forum.

Also attached to Mr. Skrha's motion to dismiss is a letter from Mr. Skrha's treating physician stating that he has treated Mr. Skrha since he was thirteen years old for a chronic ear problem which causes legitimate pain, and that Mr.

Skrha is not addicted to pain medication. A letter is attached from another doctor who has Mr. Skrha under his care for pain management. He states that the medication taken by Mr. Skrha should not interfere with his job or his parenting responsibilities, that, in fact, his medication regime allows him to perform more consistently and productively, that his dosage requirements have actually decreased, and that there is no clinical evidence of psychological or physical dependency or addiction.

Included in the evidence attached to the motion to dismiss are copies of the pleadings filed by Mr. Skrha in Alaska upon his return home.

On January 19, 1993, the trial judge heard argument on the pending motions. There is an indication in the record that prior to this hearing, Mrs. Skrha filed an action in the Cuyahoga County Court of Common Pleas, Domestic Relations Division (case No. D223521), and obtained an additional temporary restraining order concerning the children.

Subsequent to the hearing, the judge issued a ten-page order which dissolved and vacated the *ex parte* temporary restraining and temporary possession orders, denied the motions for appointment of guardian *ad litem* and for a psychological examination of the father, and set a hearing date on the father's motion for expenses and attorney fees. The order declining jurisdiction and granting Mr. Skrha's motion to dismiss is the subject of the first appeal. There is no transcript of this hearing, but the record had been settled under App.R. 9(C).

The proposed statement of the record adopted by the judge states that the motion to dismiss was handed to Mrs. Skrha's counsel just prior to the hearing, and that the court heard no sworn testimony. The judge's order concerning the hearing states that the motion to determine custody was dismissed with prejudice. There is evidence in the transcript of the February 12, 1993 pretrial that the trial judge spoke with her counterpart in Alaska prior to entering a dismissal of the motion to determine custody, and arriving at the decision that Alaska was the proper forum for the resolution of the custody dispute. See R.C. 3109.24(C).

In addition to these orders, the judge set a hearing date for February 12, 1993, and ordered that the attorneys for Mrs. Skrha show cause why they should not be subject to sanctions under Civ.R. 11, R.C. 2323.51, and the inherent powers of the court to protect the integrity of its process for having willfully, frivolously and vexatiously filed the litigation in bad faith. The February 12, 1993 hearing was converted into a pretrial. The issue of attorney fees and sanctions are not before this court.

Attorney Russo secured the services of Attorney John Lawson to represent her on the issue of the attorney fees and sanctions. Lawson, on behalf of Russo, filed a response to the order to show cause and motion for protective order. Attached

to this pleading is the affidavit of Russo, who affirmed that Lawson had been contacted during the process of determining what legal options were open to Mrs. Skrha.

At the pretrial conducted on February 12, 1993, the attorney for Mr. Skrha moved the court that Lawson be prohibited from representing Russo as he might be called as a witness. The transcript of the pretrial is a part of the record herein. The judge heard argument on the issue, and indicated that Lawson would be given time to research the issue. Although the court did not set a date by which a response would be due, no written response was ever received by the court. On March 5, 1993, the court granted the motion. It is this decision which is the subject of the second appeal.

This court will first consider the assignment of error raised by Mrs. Skrha.

"The trial court erred and abused its discretion in dismissing this action."

Mrs. Skrha sets forth four arguments in favor of her position. She argues that the trial court had a duty to exercise jurisdiction over the custody proceeding because it was in the best interest of the children, that the court erred in declining jurisdiction when an initial decision had already been made by the court, that the court erred in finding Ohio to be an inconvenient forum, and that the court erred in failing to give Mrs. Skrha reasonable notice of the motion to dismiss and an opportunity to be heard.

■ Determining the custody under the Uniform Child Custody Jurisdiction Act is within the discretion of the trial court. *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 544 N.E.2d 657.

■ The Supreme Court has held that the term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. A reviewing court should be guided by a presumption that the findings of a trial court are correct. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.

The jurisdiction of the juvenile court is codified in R.C. 2151.23, which mandates that the court is to exercise its jurisdiction in custody matters in accordance with R.C. 3109.21 to 3109.36. See R.C. 2151.23(F). These sections, R.C. 3109.21 to 3109.36, codify the Uniform Child Custody Jurisdiction Act in Ohio ("UCCJA").

Specifically, R.C. 3109.22 provides the following guidelines for determining the court's jurisdiction:

"(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

"(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction.

"(B) Except as provided in divisions (A)(3) and (4) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a parenting determination relative to the child.

"(C) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to make a parenting determination relative to the child."

Several definitions are pertinent to this discussion; R.C. 3109.21 defines the following:

"(B) 'Parenting determination' means a court decision and court orders and instructions that, in relation to the parents of a child, allocates parental rights and responsibilities for the care of the child, including any designation of visitation rights, and designates a residential parent and legal custodian of the child or that, in relation to any other person, provides for the custody of a child,

including visitation rights. It does not include a decision relating to child support or any other monetary obligation of any person.

" * * *

"(D) 'Decree' or 'parenting decree' means a parenting determination contained in a judicial decree or order made in a parenting proceeding, and includes an initial decree and a modification decree.

"(E) 'Home state' means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

"(F) 'Initial decree' means the first parenting decree concerning a particular child."

And finally, the finding of an inconvenient forum is governed by R.C. 3109.25:

"(A) A court that has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a parenting determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(B) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(C) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:

"(1) If another state is or recently was the child's home state;

"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(4) If the parties have agreed on another forum that is no less appropriate.

"(D) Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court for the purpose of

assuring that jurisdiction is exercised by the more appropriate court and that a forum is available to the parties.

"(E) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions that may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

" * * *

"(G) If it appears to the court that it clearly is an inappropriate forum, it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorney's fees, incurred by other parties or their witnesses. Payment shall be made to the clerk of the court for remittance to the proper party."

█ Turning first to the jurisdictional issues, this court has previously found that determination of jurisdiction under the UCCJA is a two-step process. The first step is to determine if Ohio has jurisdiction, and the second is to determine whether Ohio should exercise that jurisdiction. *Mayor v. Mayor* (1991), 71 Ohio App.3d 789, 595 N.E.2d 436. After applying the appropriate tests, we find that the trial court did not abuse its discretion in declining to exercise jurisdiction over this matter.

Jurisdiction is proper only if one of the conditions specified in R.C. 3109.22(A)(1) through (4) are met. R.C. 3109.22(A)(1), (3) and (4) are clearly not applicable: Ohio was not the home state of the Skrha children at the time of the commencement of the action; the children were physically present in the state but were not abused, neglected or dependent; and no other state had declined jurisdiction.

█ In the case *sub judice,* the trial judge could have exercised jurisdiction pursuant to R.C. 3109.22(A)(2). However, the refusal to do so was not an abuse of discretion. While the children and their mother were present in the state, R.C. 3109.22(B) specifies that mere presence is not sufficient to exercise jurisdiction under R.C. 3109.22(A)(2). The court was free to determine that the other factors listed in subsection (A)(2) had not been met, and that jurisdiction in Ohio was not in the best interest of the children.

█ In the order of January 26, 1993, the judge specifically found that the court was an inconvenient forum in which to hear this custody proceeding, and that Alaska is a more appropriate forum under R.C. 3109.25. The court based its decision on the fact that Alaska is and always has been the children's home state,

that Alaska has a closer connection with the children and their parents, that substantial evidence concerning the children's past, present and future care, protection, training and personal relationships is more readily available in Alaska, and finally, because, by the time of the hearing, the Superior Court of Alaska had already accepted jurisdiction. It is evident from the court's order that the factors listed in R.C. 3109.25 were carefully considered and followed.

As stated previously in the facts, the trial court's order reflects that it held a hearing, with the parties present, on all of the pending motions, including the motion to dismiss. In *Mayor, supra*, this court determined that the better practice is to hold an evidentiary hearing, complete with testimony and evidence. Here, the trial court's order reflects that a hearing was held, but the settled record shows that no sworn testimony was taken. Failure to take sworn testimony under the circumstances present in this case is not error. Like the court in *Mayor, supra*, we find that in all likelihood the conclusion reached after testimony would have been the same: Alaska is the more convenient forum.

█ Absent any clear record of the proceedings, this court must presume the validity of the lower court's proceedings, and affirm.

█ And finally, the appellant argues that the temporary restraining order constitutes an initial decree under R.C. 3109.21(F), and that under R.C. 3109.25(A) the court may not now decline to exercise its jurisdiction. We disagree. A court issuing an injunction has inherent authority to modify or vacate its own injunctive decree. A court should never ignore significant changes in the law or circumstances underlying an injunction lest it becomes inequitable that the injunction should have prospective application. *Cleveland v. Ohio Dept. of Mental Health* (1992), 84 Ohio App.3d 769, 618 N.E.2d 244.

The trial court had the inherent authority to issue a temporary restraining order that it perceived as necessary to alleviate an emergency situation, and then dissolve the restraining order upon the determination that it would not be in the best interest of the children to continue to assume jurisdiction. This is so, especially where between the time the temporary restraining order was issued and the hearing, another court has exercised its jurisdiction.

The assignment of error presented by Mrs. Skrha is overruled.

Appellant Russo raises four assignments of error, all concerning the trial court's decision to disqualify Lawson as her counsel. The assignments of error of Nancy Russo are as follows:

"The trial court erred in failing to comply with Juvenile Rule 19 by neither requiring a written motion nor indicating that the oral motion was sufficient, thus violating state requirements and due process.

"The trial court erred in disqualifying appellant's counsel under DR 5–102(A) where counsel was not to be called as a witness for his client.

"The trial court erred in disqualifying appellant's counsel under DR 5–102(B) without a determination that his testimony is or might be prejudicial to appellant.

"The trial court erred in disqualifying appellant's counsel under DR–101 [*sic*] without any examination whatsoever on whether counsel should testify and thus whether the facts fell within the allowance exceptions identified in DR–101(B) [*sic*]."

The appellant argues in the first assignment of error that the motion to disqualify Lawson should have been raised in a written motion, that there is no indication on the record that the judge accepted the oral motion, and that there is no deadline given by the judge in which the appellant was to file a response to the motion. In the second and third assignments of error the appellant states that the judge's reliance on DR 5–102(A) and (B) is misplaced, and in the fourth assignment of error Russo asserts that DR 5–101(B) requires a hearing to make a determination as to whether or not any of the exceptions would apply.

DR 5–101(B) of the Code of Professional Responsibility provides:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

DR 5–102(A) and (B) state:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

A trial court has the inherent authority to supervise members of the bar appearing before it and this necessarily includes the power to disqualify counsel in specific cases. *Morgan v. N. Coast Cable Co.* (1992), 63 Ohio St.3d 156, 586 N.E.2d 88. The Supreme Court has also held that an attorney is not incompetent to testify in an action in which he is representing one of the litigants, and that the employment as counsel goes to the weight of the testimony, not the competency. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379.

In *Mentor Lagoons, supra,* at paragraph two of the syllabus, the court held:

"When an attorney representing a litigant in a pending case requests permission or is called to testify in that case, the court shall first determine the admissibility of the attorney's testimony without reference to DR 5–102(A). If the court finds that the testimony is admissible, then that attorney, opposing counsel, or the court *sua sponte,* may make a motion requesting the attorney to withdraw voluntarily or be disqualified by the court from further representation in the case. The court must then consider whether any of the exceptions to DR 5–102 are applicable and, thus, whether the attorney may testify and continue to provide representation. In making these determinations, the court is not deciding whether a Disciplinary Rule will be violated, but rather preventing a potential violation of the Code of Professional Responsibility."

In the case *sub judice,* at the pretrial hearing, counsel for Mr. Skrha moved the court that Lawson be prohibited from representing Russo. Lawson indicated that Russo would not call him as a witness, and counsel for Mr. Skrha merely stated that he might call Lawson as a witness. Although there was some oral argument, no written motion or brief in support was filed by either party.

The trial court failed to follow the syllabus in *Mentor Lagoons, supra.* Although it was proper for opposing counsel to raise the issue before the court, there was no determination made by the court as to whether or not Lawson's testimony would be admissible. In addition, nowhere in the record is there an indication that the court went on to consider whether or not the exceptions set forth in DR 5–102 are applicable.

The assignments of error raised by Nancy Russo are sustained.

**500**

The judgment is affirmed with respect to the jurisdictional issues raised by Mrs. Skrha, and reversed with respect to the disqualification of Lawson as counsel for Russo, and the cause is remanded.

*Judgment accordingly.*

HARPER and KRUPANSKY, JJ., concur.