**In re SIMONS; Johnson et al., Appellants; Montgomery County Children's Services et al., Appellees.**

[Cite as *In re Simons* (1997), 118 Ohio App.3d 622.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16020.

Decided March 7, 1997.

*Mary Ann Thinnes,* for appellants.

*David A. Chicarelli,* for appellee Ray Simons II.

*Carley J. Ingram,* Montgomery County Assistant Prosecuting Attorney, for appellee Montgomery County Children's Services.

FAIN, Judge.

Appellants Linnya Simons and Kathleen Johnson claim that the Montgomery County Juvenile Court erred by failing to exercise jurisdiction over a custody and abuse complaint, and instead deferring to Kentucky under the Uniform Child Custody Jurisdiction Act ("UCCJA"). Appellants also argue that the juvenile

court violated their due process rights by communicating with the Kentucky court regarding the status of the action pending in that state, with a view to deciding whether to exercise jurisdiction in Ohio.

We conclude that the juvenile court properly exercised its discretion in declining to exercise its jurisdiction. We further conclude that the juvenile court did not violate the due process rights of appellants by complying with the communication provisions of the UCCJA.

I

The record in this case consists of the pleadings with attached exhibits, transcripts of two hearings, and the orders of the juvenile court. From the pleadings, we are able to glean the following undisputed facts and procedural history.

Linnya Simons and Ray Simons were married in 1990. They have one child of the marriage, Alexandria, who was born in April 1991. They resided in Lexington, Kentucky during the marriage. The pleadings indicate that Linnya left Lexington, with Alexandria, in June 1994, and moved into her mother's residence in Dayton, Ohio. Prior to moving, Linnya filed for divorce in Lexington, Fayette County, Kentucky.

On February 29, 1996, Linnya's mother, Kathleen Johnson, filed an action in the Common Pleas Court of Montgomery County, Juvenile Division, which was styled as a "complaint for custody &/or private complaint for dependency/abuse." The complaint made allegations against Ray regarding physical, emotional and sexual abuse that he had allegedly committed against Linnya and Alexandria. The complaint also alleged that the Kentucky courts had granted Linnya temporary custody of Alexandria, and had granted Ray *supervised* visitation. The complaint alleged that as a "result of the forced contact with her abusive father," Alexandria is an abused and dependent child. The complaint asked that temporary custody of the child be granted to Johnson or that Linnya be granted temporary and permanent custody. The complaint further asked the juvenile court to adjudge the child abused and dependent, and to order Linnya not to allow further contact with Ray pending professional recommendation.

In March 1996, Linnya filed a separate domestic violence action in the Montgomery County Common Pleas Court, Domestic Division. An *ex parte* order of protection was entered, but there is no indication that any further proceedings were had in that action.

On March 8, 1996, Johnson and Linnya filed a motion in the juvenile court proceeding seeking to join Montgomery County Children's Services ("MCCS") as a party. The motion also sought immediate temporary orders and an adjudicato-

ry hearing. The juvenile court granted the motion to join MCCS as a party. On March 12, 1996, the juvenile court entered a decision declining to exercise jurisdiction, stating as follows:

"It appears that the allegations presented in this case establish circumstances over which this Court has exclusive original jurisdiction in the State of Ohio. However, it would also appear the State of Kentucky has full jurisdiction over the same or similar allegations and has already heard a substantial portion of the case. It is not clear and, in fact, does not appear that the latest allegations have been presented to the Kentucky Court and therefore this Court will not issue any ex parte orders.

"Further, it appearing to this Court that there are already two Courts involved with this family, that a third Court, this Court, should not exercise jurisdiction unless it is clearly demonstrated that given the opportunity, the other Courts have failed to protect the child."

Thereafter, MCCS filed a motion seeking to have the court place Alexandria in the temporary custody of Johnson. The juvenile court denied the motion, by order dated March 28, 1996, reiterating the decision that it would not exercise jurisdiction. The order also indicated that the juvenile court judge had communicated with the trial judge in Kentucky. Thereafter, Johnson filed an amended complaint with nineteen attached exhibits. This time the complaint asked that Linnya be given custody pending professional recommendation, or in the alternative that the child be adjudged abused and/or dependent and that custody by given to Linnya, Johnson or MCCS.

Ray filed a motion to dismiss the case based upon the decision of the juvenile court to decline jurisdiction. Linnya and Johnson filed a motion for reconsideration, a stay, relief from judgment, a hearing, and temporary orders. They also filed a motion seeking to have the juvenile judge recuse himself based upon their claim that his communication with the Kentucky court was inappropriate and denied them due process. The juvenile court entered another decision and order on June 11, 1996. This decision noted that the request for recusal filed by Johnson and Linnya was not supported by affidavit. The juvenile court also stated that "[t]he sole purpose of this Judge's communication with both the Kentucky Judge and the Montgomery County Domestic Relations Judge was to insure that the child's interests were being protected and that the due process rights of all the parties were preserved. All of said actions were in accord with the spirit and the purpose of the Uniform Child Custody Jurisdiction Act as adopted in Ohio." The juvenile court granted Ray's motion, and dismissed the action without prejudice. It is from this order that Linnya and Johnson appeal.

II

Appellants' first assignment of error is as follows:

"The Trial court committed reversible, prejudicial error and abused its discretion as a matter of law in dismissing this case and refusing to exercise its exclusive, original jurisdiction in this dependency/abuse matter."

We begin by noting that the appellate briefs of both parties are replete with claims of abuse and psychological problems. Linnya claims that Ray has abused both her and Alexandria. Ray claims that Linnya has psychological problems and that she has been abusive towards the child. While this court is aware of the growing problem of child abuse, and the need to handle cases involving claims of child abuse expeditiously and decisively, we must emphasize that the issue of whether Alexandria has been abused is not before us. The question we are asked to decide is whether the juvenile court properly exercised its discretion by declining to exercise its jurisdiction and instead permitting the Kentucky court to exercise its jurisdiction to adjudicate these issues.

Appellants' assignment of error turns on their contention that the juvenile court has jurisdiction over the custody issue, to the exclusion of the Kentucky court. They claim that, pursuant to R.C. 2151.23(A)(1) and (2), the juvenile court has exclusive jurisdiction over child abuse and custody cases. They further claim that this exclusive jurisdiction exists despite the divorce case pending in Kentucky, since the juvenile court's jurisdiction "to determine the custody of a child alleged to be abused, neglected, or dependent when not the ward of any court in this state includes children subject to a divorce decree granting custody pursuant to R.C. 3109.04." In support, they cite *In re Poling* (1992), 64 Ohio St.3d 211, 594 N.E.2d 589. They also cite *State v. Wilson* (1995), 73 Ohio St.3d 40, 652 N.E.2d 196; *In re Gail* (1967), 12 Ohio Misc. 251, 41 O.O.2d 341, 231 N.E.2d 253; and *In re Jones* (J.C.1946), 46 Ohio Law Abs. 132, 33 O.O. 331, 68 N.E.2d 97, for the proposition that the exclusive subject matter jurisdiction of the juvenile court cannot be waived. Appellants further contend that the UCCJA has no application to this case since it is not a "simple custody case." Alternatively, they argue that if the UCCJA is applicable, its provisions must be read to require that the juvenile court exercise its jurisdiction. Appellants do not argue that Kentucky does not have jurisdiction over the custody issue in the divorce case; instead they argue that its jurisdiction has been superseded.

Neither Ray nor the juvenile court has taken the position that the juvenile court does not have jurisdiction in this matter. Instead, Ray argued, and the juvenile court agreed, that the Kentucky court also has jurisdiction over the issue of custody and that, pursuant to the UCCJA, the Ohio juvenile court should defer to the jurisdiction of the Kentucky court.

■ We agree with appellants that the juvenile court does have jurisdiction over this matter. However, we do not agree with their claim that the jurisdiction of the Ohio juvenile court precludes a court of another state from properly exercising jurisdiction in accordance with the provisions of the UCCJA. Instead, we conclude that the UCCJA must be utilized in determining the jurisdiction issue. In reaching this conclusion, we rely upon the language contained in R.C. 2151.23(F)(1) and 3109.04(A), both of which specifically state that the exercise of jurisdiction under these statutory provisions is subject to the terms of the UCCJA.

. The cases cited by appellants do not dissuade us from our position. In *Poling,* the issue of the applicability of the UCCJA to the juvenile court was not raised, since it did not involve an out-of-state court proceeding. Likewise, *Wilson, Patton, Gail* and *Jones* are inapplicable to this case. First, *Wilson* involves a juvenile charged with a crime, rather than an action for abuse and custody. In that case, the Ohio Supreme Court held that the exclusive jurisdiction of the juvenile court cannot be waived in a case involving an allegedly delinquent juvenile. This holding is predicated upon the fact that, unless the juvenile is properly bound over for trial to the adult court, the adult court lacks subject matter jurisdiction over the prosecution. *Id.,* 73 Ohio St.3d at 44, 652 N.E.2d at 199. Second, we note that the other four cases were decided prior to the adoption of the UCCJA by the Ohio General Assembly.

There is no question that the juvenile court has jurisdiction in this matter pursuant to R.C. 3109.22. The only question is whether the juvenile court's decision not to exercise its jurisdiction was error. Pursuant to the UCCJA, the juvenile court may decline to exercise jurisdiction if there is a parenting action pending in another state, there is a finding of inconvenient forum, or there is a finding that a parent has improperly taken or retained a child. R.C. 3109.24, 3109.25 and 3109.26. We believe that the juvenile court did not abuse its discretion in declining to exercise jurisdiction because there was a pending proceeding, and the juvenile court could properly have found that it was an inconvenient forum.

R.C. 3109.24, which addresses situations in which an action is pending in another state, reads as follows:

"(A) A court of this state shall not exercise its jurisdiction, if at the time of filing the petition a parenting proceeding concerning the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections 3109.21 to 3109.36 of the Revised Code, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons."

This section requires that the foreign court's exercise of jurisdiction be in substantial conformity with the UCCJA. *Pasqualone v. Pasqualone* (1980), 63 Ohio St.2d 96, 17 O.O.3d 58, 406 N.E.2d 1121. Kentucky has adopted a version of the UCCJA that is substantially similar to Ohio's. See Kentucky Revised Statutes Chapter 403. Accordingly, we must review the jurisdictional requirements of the UCCJA to determine whether Kentucky's exercise of jurisdiction is appropriate.

R.C. 3109.22 provides the following guidelines for determining the jurisdiction of a court:

"(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;.

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection training, and personal relationships;

"(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment of abuse or is otherwise neglected or dependent;

"(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction.

"(B) Except as provided in divisions (A)(3) and (4) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a parenting determination relative to the child.

"(C) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to make a parenting determination relative to the child."

 Ray claims that Kentucky court has jurisdiction pursuant to sections (A)(2) and (3) of R.C. 3109.22. We do not agree that R.C. 3109.22(A)(3) confers jurisdiction upon the Kentucky court. However, we do conclude that Kentucky is properly exercising jurisdiction pursuant to section (A)(2) because the child and Ray have a significant connection with Kentucky, and there is available in that state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. Ray still resides in Kentucky. The allegations indicate that most, if not all, of the alleged abuse occurred in Kentucky. The Kentucky court has ordered evaluations in Kentucky of both Linnya and Ray to determine their fitness as parents. Further, the record indicates that all of the witnesses who have been able to evaluate both Ray and Linnya are located in Kentucky, as are the majority of the other relevant witnesses. We also note, although it is not dispositive of the issue, that Kentucky was clearly the child's home state at the time Linnya commenced the divorce and custody proceeding there. Further, we note that, according to the record, the Kentucky court has been holding hearings regarding the divorce and custody case regularly since the filing of that action.

We also find that the juvenile court property exercised its discretion since it may reasonably be concluded that Ohio is an inconvenient forum. R.C. 3109.25 states that "[i]n determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction." For the purposes of making such a determination, R.C. 3109.25(C) states that the court may consider the following factors:

"(1) If another state is or recently was the child's home state;

"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

"(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"(4) If the parties have agreed on another forum that is no less appropriate."

First, Linnya invoked, and indeed submitted to, the jurisdiction of the Kentucky court by filing an action for divorce and child custody in that court. Thus, it can be argued that Linnya agreed that Kentucky is no less appropriate a forum than Ohio. Additionally, as stated above, the Kentucky court does have substantial evidence concerning the child. Therefore, the juvenile court could properly find that it is an inconvenient forum, and that the child's interests are better served by allowing the Kentucky court to retain jurisdiction.

Appellants admit that "[i]f this were [a simple custody matter] there would be an argument that [since] the action was commenced in Kentucky that court could retain jurisdiction, or could defer to Ohio since Alexandria is no longer a resident of Kentucky." In our experience, there is no such beast as a "simple" custody matter. Regardless, both the Kentucky and Ohio actions involve custody. The fact that there are allegations of abuse does not transform this case into anything less than a custody action.

Finally, appellants raise the argument that neither Ohio nor Kentucky has made reasonable efforts to prevent removal of the child from Linnya, and that there has been no finding that the child is in any imminent danger in Linnya's care. This issue has ho bearing on whether the judgment of the juvenile court was appropriate. "Determining the custody under the Uniform Child Custody Jurisdiction Act is within the discretion of the trial court." *In re Skrha* (1994), 98 Ohio App.3d 487, 493, 648 N.E.2d 908, 912, citing *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 544 N.E.2d 657. An abuse of discretion connotes more than an error of law or judgment; it implies that the juvenile court's attitude is unreasonable, arbitrary or unconscionable. A reviewing court is guided by the presumption that the findings of the juvenile court are correct: *In re Jane Doe* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181. We conclude that the juvenile court did not abuse its discretion in declining to exercise its jurisdiction in this matter. Therefore, appellants' first assignment of error is overruled.

### III

Appellants' second assignment of error is as follows:

"The trial court committed reversible, judicial error and abused its discretion as a matter of law and violated appellants' right to procedural due process, under the Constitution and under the UCCJA, in conducting ex parte communications with the Kentucky court and in relying on information conveyed in such communication to justify dismissal of this dependency/abuse/custody matter without providing appellants with appropriate notice and an opportunity to be heard."

Appellants contend that the juvenile court erred by communicating *ex parte* with the Kentucky court regarding the status of the two cases. This argument is premised upon their contention that the court violated their due process rights by communicating *ex parte*, without allowing appellants to participate, and without simultaneously recording the substance of the communication. Appellants cite *Kent v. United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, and *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, as support for their contention that the communication violated due process. However, after review-

ing both of these cases, we find them distinguishable. Both cases involved juveniles who were taken into custody for committing criminal acts. They did not involve custody issues. These cases stand for the proposition that juveniles are entitled to the same due process rights as adults when charged with crimes.

Appellants also refer this court to several decisions from other states regarding the propriety of judicial communications in custody cases. See *Osgood v. Dent* (1983), 167 Ga.App. 406, 306 S.E.2d 698; *Yost v. Johnson* (Del.1991), 591 A.2d 178; *In re Marriage of Brown* (1985), 218 Mont. 14, 706 P.2d 116. We are not bound by these cases, but, in any event, we find them to be distinguishable.

In *Osgood*, custody was being contested in both Georgia and Colorado. The Georgia trial judge made it known that, during a custody proceeding, he contacted the Colorado state's attorney, and he was contacted by the Colorado trial judge regarding the matter. The trial judge admitted that in making his custody decision, he relied on documents not in evidence, and conversations with the state's attorney. A reading of the case indicates that the information given by the state's attorney amounted to testimony regarding the substance of the case pending in Colorado. The trial judge further stated that the other trial judge requested him to stay the proceedings in Georgia. The case does not indicate whether the communications between the trial judges involved any exchange of evidence. On appeal, the Georgia judge's decision was reversed. It is not clear whether the holding was based solely upon his use of documents and testimony from the state's attorney, or whether it was also based upon his communication with the trial judge.

In *Yost*, the Supreme Court of Delaware held that the Family Court "violated [the parties'] due process rights when it ruled, on the basis of an ex parte communication with a Virginia court, that it had subject matter jurisdiction to decide [the] case." *Id.*, 591 A.2d at 180. The Delaware court held that the parties were entitled to notice and the chance to participate in the telephone conversation, and that anything less violated the Delaware Constitution. *Id.* at 182. This holding appears to be based upon a finding that the trial judge discussed procedural as well as substantive issues with the other court. *Id.* The case did not make clear whether the same holding would issue if the communications involved only procedural issues. In this case, there is no indication that the trial court discussed any substantive issues with the Kentucky court.

Finally, in *Marriage of Brown*, trial courts in Montana and Arizona held a telephone conference with both parties participating. Based upon the conference, the trial courts agreed that jurisdiction was conferred upon the Arizona court, and that all custody proceedings in Montana would be stayed. On appeal, the jurisdictional finding of the Montana court was upheld. In its decision, the Supreme Court of Montana differentiated between procedural and substantive

determinations, holding that a determination regarding jurisdiction is a procedural, rather than a substantive inquiry, and does not require an evidentiary hearing. The case did not expressly address communications solely between trial judges, without participation by the parties, but intimated that it would condone such communications if they concerned only procedural issues.

Regardless of the law in other states, we must look to the law of Ohio to determine whether the juvenile court erred. Canon 3(A)(4) of the Code of Judicial Conduct provides as follows:

"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, *except as authorized by law*, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. * * * Nothing contained herein, however, shall preclude a judge from non-substantive *ex parte* communications on procedural matters and matters affecting prompt disposal of the business of the court." (Emphasis added.)

█ We conclude that the juvenile court's *ex parte* communication with the judge in Kentucky was authorized by law. Under Ohio's UCCJA, communications between the courts of different states is clearly encouraged. R.C. 3109.24 allows, and 3109.25 requires, communications between trial courts. Neither statute requires that the parties participate in the conversation. Nor do the statutes require that the communications be recorded. Nevertheless, the juvenile court did make a record of the substance of the communication with the Kentucky court, as noted in its decision dated March 12, 1996. That decision in no way indicates that the two judges discussed anything more than the status of the two proceedings.

█ The purpose of the UCCJA is "to avoid jurisdictional competition and conflict with the courts of other states and assure that the state with the optimum access to the relevant facts makes the custody determination, thus protecting the best interests of the child". *In re Wonderly* (1981), 67 Ohio St.2d 178, 180, 21 O.O.3d 111, 113, 423 N.E.2d 420, 422. We conclude that communications regarding the status of other pending cases are essential to the fulfillment of the purposes of the UCCJA. In cases like the one before us, where there is no evidence that the trial judges exchanged evidence or conducted communications regarding the substantive issues of the pending cases, we cannot say there is a violation of any party's due process rights. Accord *State v. Hill* (1995), 73 Ohio St.3d 433, 653 N.E.2d 271 (*ex parte* communication between trial judge and jury found not prejudicial to parties in light of fact that no evidence was produced that substantive matters were discussed).

Appellants' second assignment of error is overruled.

## IV

Both of appellants' assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.