OPINION
Plaintiff-appellant, Daniel Lawrence ("Lawrence"), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division (the "trial court"), dismissing his motion for contempt against defendant-appellee, Connie Tibbits ("Tibbits," fka Connie Lawrence), and relinquishing its jurisdiction over the matter to the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (the "Florida court").
The parties were divorced in Clermont County, Ohio in 1985. Lawrence received custody of the parties' son, Kyle (born in November 1983), and Tibbits was granted visitation. Lawrence lives in Felicity, Ohio, while Tibbits lives in Bradenton, Florida. On January 12, 2001, Lawrence filed a motion for interference with child custody in the trial court, alleging that Tibbits took Kyle (then sixteen years old) from Lawrence on January 10, 2000, took him to Florida without Lawrence's permission, and has refused to return him. The trial court restyled the motion as a motion for contempt. At a March 5, 2001 hearing (continued from a prior date, and at which both parties appeared with their attorneys), the magistrate stated in relevant part that
 This Court has received a letter and an order from [a judge from the Florida court]. * * * He has indicated that he has dismissed or he has denied Mr. Lawrence's, because Mr. Lawrence is a defendant down there, motion to dismiss on whatever is pending in Florida. Under the Uniform Child Custody Jurisdiction Act [the "UCCJA"], which is [R.C.] 3109.21, it is unclear from this material whether I really have jurisdiction to hear this case at all, given what's happening in Florida. Therefore, I'm not going to just dismiss it because I may have jurisdiction to hear it. What I'm going to do is continue this case out until at least after the criminal trial[1] to see what's happening and check in with it again.
In its March 5, 2001 decision, the magistrate noted that the trial court "ha[d] received communications from Florida indicating [the] Florida Court is hearing or will be hearing parenting issues." As a result, the matter was continued to May 21, 2001.
However, by decision dated May 2, 2001 (and filed two days later), the magistrate vacated the May 21 hearing and declined to hear Lawrence's motion for contempt on the grounds that "[t]his matter came before the Court pursuant to a determination by the [Florida court] that the [Florida court] would retain jurisdiction in case no. 2000-12834-CA-F2, involving the same parties. The Court spoke with both Ohio counsel and with Ms. Avila ([Tibbits'] Florida counsel) by telephone." Lawrence filed objections to the magistrate's decision as well as a request for findings of fact and conclusions of law.
On May 22, 2001, the magistrate dismissed Lawrence's request for findings of fact and conclusions of law. By entry filed August 8, 2001, the trial court overruled Lawrence's objections on the ground that Lawrence had failed to submit a transcript in violation of Civ.R. 53(E)(3)(b) and the trial court's own Local Rule 5.2. Unabated, Lawrence filed a motion for reconsideration which the trial court overruled on September 12, 2001. This appeal follows in which Lawrence raises two assignments of error which will be addressed in reverse order.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING HIS OBJECTIONS TO THE MAGISTRATE'S DECISION, WHICH DECISION DISMISSED THE JURISDICTION OF THE OHIO COURTS IN FAVOR OF THE FLORIDA COURTS, WHEN THERE IS NO EVIDENCE TO SUGGEST THAT FLORIDA IS THE APPROPRIATE FORUM.
Under this assignment of error, Lawrence argues that the trial court erred when it determined that it did not have jurisdiction to consider his motion for contempt. Lawrence asserts that under the UCCJA, the trial court had exclusive jurisdiction over the matter and was without authority to relinquish its jurisdiction to the Florida court.
It is well-established that the decision whether or not to exercise jurisdiction pursuant to the UCCJA is within a trial court's sound discretion. See Smith v. Smith (Dec. 14, 1998), Fayette App. No. CA98-04-005, unreported. As a result, a reviewing court will not reverse a trial court's decision regarding its own jurisdiction absent an abuse of discretion. Id. An abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.2d 217, 219.
Generally, "[t]he court in which a decree of divorce is originally rendered retains continuing jurisdiction over matters relating to the custody, care, and support of the minor children of the parties." Loetzv. Loetz (1980), 63 Ohio St.3d 1, 2. Nonetheless, "a jurisdictional dispute may arise when one parent moves out of state with the children. The question then becomes which state has the authority to exercise jurisdiction over the matter." Justis v. Justis (1998), 81 Ohio St.3d 312,314. To resolve such jurisdictional disputes, the UCCJA was drafted in 1968 and adopted in Ohio in 1977 (it is codified in R.C. 3109.21 through 3109.36). The UCCJA was intended to "avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child." Id. at 314-315.
Under R.C. 3109.22(A), a trial court in Ohio that has jurisdiction to make a parenting determination shall exercise that jurisdiction only if one of the following conditions is met:
 (1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent * * * or is absent from this state for other reasons, and a parent * * * continues to live in this state;
 (2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
 (3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;
 (4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction.
"Home state" is defined as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months[.]" R.C.3109.21(E).
Clearly, Ohio cannot exercise jurisdiction in this case under R.C.3109.22(A)(3) or (4). Kyle has not been abandoned, abused, neglected, or mistreated, and Florida has expressed its intention to exercise jurisdiction over this case. Nor can Ohio exercise jurisdiction under R.C. 3109.22(A)(1). While Kyle was born and lived in Ohio until Tibbits allegedly took him to Florida on January 10, 2000, Lawrence did not file his motion for contempt until January 12, 2001, a full year after Kyle had lived in Florida. By the time Lawrence filed his motion, Ohio was no longer the home state of Kyle. See R.C. 3109.21(E).
Ohio can, however, exercise jurisdiction under R.C. 3109.22-(A)(2). Lawrence lives in Ohio, and until Tibbits allegedly took Kyle to Florida in 2000, Kyle had lived in Ohio for sixteen years. In addition, Ohio entered the divorce decree. Both Lawrence and Kyle have a significant connection with Ohio, and there is available in Ohio "substantial evidence concerning [Kyle's] present or future care, protection, training, and personal relationships." Ohio, therefore, has jurisdiction in this matter under R.C. 3109.22(A)(2). The question then becomes whether the trial court's decision not to exercise its jurisdiction was error.
Pursuant to the UCCJA, a trial court may decline to exercise jurisdiction if there is a parenting action pending in another state, R.C. 3109.24, or if there is a finding of inconvenient forum. R.C.3109.25. See, also, Justis, 81 Ohio St.3d at 317 (another state can modify an existing parenting decree if [1] the state seeking to modify the decree has jurisdiction to make a child custody determination, and [2] the original state no longer has jurisdiction, or has declined to exercise such jurisdiction).
R.C. 3109.24, which governs situations in which an action is pending in another state, provides in relevant part that
 (A) A court of this state shall not exercise its jurisdiction, if at the time of filing the petition a parenting proceeding concerning the child was pending in a court of another state exercising jurisdiction substantially in conformity with [R.C.] 3109.21 to 3109.36, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
* * *
 (C) If a court is informed during the course of a parenting proceeding that a parenting proceeding concerning the child was pending in a court of another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending for the purpose of litigating the issue in the more appropriate forum and to ensure that information is exchanged in accordance with [R.C.] 3109.34 to 3109.36. * * *
Although it is not clear when such motion was filed, the record shows that Lawrence filed in the Florida court a motion to dismiss for lack of jurisdiction. What is clear, however, is that on the very same day that Lawrence filed his motion for contempt in the trial court, the Florida court was conducting a hearing on his motion to dismiss. A letter dated February 27, 2001 from the Florida court to the trial court states in relevant part that
 I ruled from the bench, denying the former husband's motion to dismiss thereby retaining jurisdiction. * * * I permitted Mr. Lawrence to appear at the hearing by telephone. * * * I spoke with the child in controversy, Kyle Lawrence, who is 17 years of age and attending school in Manatee County, Florida. He was adamant * * * it was his decision to live with his mother. He refused accept [sic] that he might be required to return to his father's home. I believe the young man to be sufficiently intelligent and mature to participate in the making of that decision.
 Enclosed with the letter was a February 27, 2001 order from the Florida court denying Lawrence's motion to dismiss.
The foregoing clearly shows that a parenting proceeding concerning Kyle was pending in the Florida court at the time Lawrence filed his motion for contempt in the trial court. The record also clearly shows that the magistrate was aware of the pending proceeding in the Florida court by the time it conducted its March 5, 2001 hearing. As a result of the jurisdictional dispute, the hearing was continued to a later date. R.C.3109.24 is therefore applicable as long as the Florida court's exercise of jurisdiction was in substantial conformity with the UCCJA. Pasqualonev. Pasqualone (1980), 63 Ohio St.2d 96, 105.
Florida has enacted a version of the UCCJA (codified in Fla. Stat. 61.1304 through 61.1344) that is substantially similar to Ohio's. See Inre McClelland (Sept. 29, 1995), Lake App. No. 94-L-153, unreported. Fla. Stat. 61.1308(1) sets forth the legal prerequisites necessary for Florida courts to have jurisdiction under the UCCJA as follows:
 (1) A court of this state which is competent to decide child custody matters had jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state:
 1. Is the home state of the child at the time of commencement of the proceeding, or
 2. Had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state;
 (b) It is in the best interest of the child that a court of this state assume jurisdiction because:
 1. The child and his or her parents, or the child and at least one contestant, have a significant connection with this state, and
 2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
 (c) The child is physically present in this state and:
1. The child has been abandoned, or
 2. It is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(d)
 1. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
 2. It is in the best interest of the child that a court of this state assume jurisdiction.
 "Home state" is defined as "the state in which the child, immediately preceding the time involved, lived with his or her parents, a parent, * * * for at least 6 consecutive months * * *." Fla. Stat. 61.1306(5).
Clearly, Florida cannot exercise jurisdiction in this case under the UCCJA as set forth in Fla. Stat. 61.1308(1)(c) or (d). As previously noted, Kyle has not been abandoned, abused, neglected, or mistreated, and Ohio has jurisdiction over this case pursuant to R.C. 3109.22(A)(2). Florida can, however, exercise jurisdiction under Fla. Stat. 61.1308(1)(a) or (b). Kyle has been living in Florida with his mother for a year. Florida is thus Kyle's home state. See Fla. Stat. 61.1306(5). In addition, Kyle and Tibbits have a significant connection with Florida and there is available in Florida substantial evidence concerning Kyle's present or future care, protection, training, and personal relationships. We therefore conclude that Florida is properly exercising jurisdiction over this matter under the UCCJA.
Having so concluded, and in light of all of the foregoing, we find that the trial court did not abuse its discretion in declining to retain its original jurisdiction, and instead in relinquishing its jurisdiction to the Florida court. See R.C. 3109.24. Lawrence's second assignment of error is overruled.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN REFUSING TO REVERSE THE MAGISTRATE'S DECISION OF MAY 4, 2001, WHICH DECISION TERMINATED THE JURISDICTION OF THE CLERMONT COUNTY DOMESTIC RELATIONS COURT.
Under this assignment of error, Lawrence first argues that it was inequitable for the trial court to refuse to entertain his motion for reconsideration. Lawrence asserts that "[a]lthough it does not exist within the Rules of Civil Procedure, nor in any local rules of court, there is a recognition among experienced attorneys that there is an animal known as a `Motion to Reconsider.'"
There is no such rule in Ohio. Time and again, the Ohio Supreme Court has held that motions for reconsideration of a final judgment in the trial court are a nullity. Pitts v. Ohio Dept. of Transp. (1981),67 Ohio St.2d 378, 379. See, also, Mueller v. Mueller (Apr. 3, 2000), Butler App. No. CA99-07-123, unreported. A Civ.R. 60(B) motion is the only proper vehicle for obtaining relief in the trial court after a final judgment. Antonopoulos v. Eisner (1972), 30 Ohio App.2d 187, paragraph one of the syllabus. The trial court therefore properly overruled Lawrence's motion for reconsideration.
Lawrence also argues that it was "plain error for the magistrate to determine, based on a brief, unnoticed, unrecorded telephone conference that occurred on or about May 2, 2001, or prior to that time, to vacate the hearing scheduled to occur on May 21, 2001." Lawrence essentially asserts that by communicating ex parte with counsel and the Florida court, and without simultaneously recording the communications, the trial court deprived him of the opportunity to be heard.
With regard to the trial court's communication with the Florida court, we find that
 Under Ohio's UCCJA, communications between the courts of different states is clearly encouraged. R.C. 3109.24
allows, and R.C. 3109.25 mandates, communications between trial courts. Neither statute requires that the parties participate in the conversation. Nor do the statutes require that the communications be recorded. * * * [C]ommunications regarding the status of other pending cases are essential to the fulfillment of the purposes of the UCCJA.
In re Simons (1997), 118 Ohio App.3d 622, 632. Canon 3(A)(4) of the Code of Judicial Conduct, in turn, provides that
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to the law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. * * * Nothing contained herein, however, shall preclude a judge from non-substantive ex parte communications on procedural matters and matters affecting prompt disposal of the business of the court.
In the case at bar, there is no evidence that the trial court and the Florida court exchanged evidence or conducted communications regarding the merits or substantive issues of the case. In re Simons at 632. We therefore find that the trial court's communication with the Florida court did not deprive appellant of the opportunity to be heard.
With regard to the trial court's communication with both Ohio counsel and Tibbits' Florida counsel, we first note that Lawrence was originally represented by a different attorney. Lawrence's current attorney started representing him sometime after the magistrate's May 2, 2001 decision. The record clearly shows that both parties and their counsel were informed by the magistrate during the March 2001 hearing and in its March 5, 2001 decision that a jurisdictional dispute existed between the trial court and the Florida court. Yet, Lawrence's then counsel did not object to the magistrate's reference to, consideration of, or reliance upon the documents received by the trial court from the Florida court. Nor did Lawrence's then attorney object to the magistrate's May 2, 2001 decision.
The record also clearly shows that, unlike Lawrence's current attorney, Lawrence's then attorney was part of the alleged improper communications with the trial court. Lawrence seems to imply that the trial court's communications with the attorneys were improper merely because they happened. We disagree. The trial court's telephone conversation may have taken place with the three attorneys at the same time. Or, the trial court may have contacted the attorneys after the Florida court had decided to retain jurisdiction, solely to inform them that the trial court no longer had jurisdiction. Rather than speculating as to the tenor of those communications, Lawrence's current attorney could have contacted his then attorney, but apparently did not. There is no evidence that the trial court's communications with the attorney involved the merits or substantive issues of the case. We have not found, nor has Lawrence cited, any cases involving communication between a trial court and attorneys in a UCCJA situation. We therefore find that the trial court did not err, based upon its communications with the Florida court and counsel, by vacating the hearing scheduled to occur on May 21, 2001.
Lawrence finally argues that the magistrate's conduct at the hearing held on or about May 2, 2001, and the trial court's refusal to grant his objections, amount to an abuse of discretion. We note that there is no evidence in the record that the magistrate held a hearing on or about May 2, 2001. In its May 2, 2001 decision, the magistrate declined to hear Lawrence's motion for contempt on the ground that the Florida court had retained jurisdiction in a case pending in the Florida court involving the same parties. The magistrate's decision noted that the trial court had spoken with both Ohio counsel and Tibbits' Florida counsel by telephone. In light of the foregoing and our ruling under Lawrence's second assignment of error, we reject Lawrence's argument. Lawrence's first assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Tibbits was indicted on November 8, 2000 on one count of interference with custody in violation of R.C. 2919.23(A)(1).