OPINION
{¶ 1} Appellant, Karen Binney, mother of Brittany, Alyssa, and Carly Zak, all of whom are minors, appeals from the November 21, 2001 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, in which the trial court found appellant to be in civil contempt and criminal contempt for violating the visitation provisions ordered by the court.[1] Appellant was given an opportunity to purge herself of the civil contempt. In that entry, the trial court also determined that the children had a significant connection to Ohio, and thus, the Ohio court had jurisdiction over the matter.
 {¶ 2} On May 28, 1997, appellant filed for divorce from appellee, Martin Zak. One of the issues was custody of their three minor children. The divorce was finalized in November 1998, and appellant was awarded custody of the children. Appellee was granted supervised visitation upon his completion of psychological assessment and counseling. On February 14, 2000, appellant filed a complaint for abuse. She also sought an order suspending all visitation by appellee with the children and a no contact order. On February 17, 2000, appellant filed a motion to transfer and/or relinquish jurisdiction from the domestic division to the juvenile division of the Lake County Court of Common Pleas. On May 9, 2000, appellee filed a motion to modify visitation. On June 8, 2000, both the juvenile division and the domestic relations division recused themselves from hearing the case because of conflicts of interest; thus, the case was sent to the Lake County Probate Court.
 {¶ 3} On June 15, 2000, appellant filed a motion to relocate to the state of Texas. In a November 15, 2000 judgment entry, the motion to relocate was granted, and the complaints of abuse were dismissed with prejudice. Appellee's motion to modify visitation was also dismissed. Appellee was given adjusted visitation since the children would be living in Texas. Appellee's visitation was to be supervised in the presence of another adult until June 2001, unless he was in public with the children.
 {¶ 4} On April 30, 2001, appellee filed a motion to show cause why appellant should not be held in contempt for her denial of telephone contact and visitation, a motion for attorney fees and other sanctions, and a motion to modify child support enforcement agency records. Appellant raised allegations that appellee was sexually abusing the children, and as a result, on May 4, 2001, she filed a petition to register a foreign judgment and suit seeking modification of the out-of-state order in Texas. On May 18, 2001, appellee filed a motion to modify the designation of residential parent and legal custodian. A hearing was held in Texas, on May 25, 2001, and an emergency order was entered until the Texas court received notice from the Ohio court that Ohio had declined jurisdiction. On July 9, 2001, appellant filed, in Ohio, a motion to dismiss appellee's motion and to declare Ohio an inconvenient forum.
 {¶ 5} On August 2, 2001, the probate court transferred the case back to the domestic relations division. On August 16, 2001, the matter was transferred to the probate court. Ultimately, on November 6, 2001, the Supreme Court of Ohio assigned a visiting judge to handle the case in the Lake County Court of Common Pleas, Juvenile Division.
 {¶ 6} On November 19, 2001, appellant's attorney filed a motion for continuance requesting that the hearing scheduled for November 21, 2001, be continued since counsel was previously scheduled to appear in Cuyahoga County. The motion also stated that notice for the November 21 hearing was not received until November 16, 2001, and that appellant did not have adequate time to arrange a reasonably priced flight from Texas. The motion was denied, and the hearing took place on November 21, 2001. Appellant took the stand and related that the children had lived with her in Texas since August 2000. She stated that the children attended school and church in Texas, and that the children's doctors and dentists were in Texas. She also indicated that the only relatives in Ohio besides appellee were the children's grandparents. Appellant was found guilty of civil and criminal contempt and sentenced to fifteen days in jail. She timely filed the instant appeal and now assigns the following as error:
 {¶ 7} "[1.] The trial court erred as a matter of law and abused its discretion when it retained jurisdiction over an interstate custody dispute rather than transferring the case to the State of Texas.
 {¶ 8} "[2.] Appellant was denied due process of law when the trial court overruled her repeated requests for a continuance and the court held a contempt hearing with less than one week notice to the accused from which to prepare a defense.
 {¶ 9} "[3.] Appellant's conviction for contempt of court, both indirect civil and criminal contempt, are against the manifest weight of the evidence and/or sufficiency of the evidence."
 {¶ 10} Under the first assignment of error, appellant argues that the trial court erred in not transferring the case to the state of Texas.
 {¶ 11} This court has stated that a juvenile court has discretion under the provisions of the Uniform Child Custody Jurisdiction Act ("UCCJA"), adopted in Ohio as R.C. 3109.21 et seq., to assume jurisdiction in cases that involve an interstate change of custody proceeding. Buchheit v. Watson, 11th Dist. No. 2001-L-189,2002-Ohio-7147, at ¶ 6; In re Smith (Dec. 4, 1998), 11th Dist. No. 98-A-0033, 1998 WL 964689, at 2. Hence, an appellate court cannot reverse a trial court's decision as to jurisdiction absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 12} However, we note that the juvenile court's discretion is guided and limited by the statutory factors contained in R.C. 3109.22 and3109.25. These two provisions set forth a two-step process that governs a juvenile court's determination as to whether to exercise jurisdiction in a given case. In re Skrha (1994), 98 Ohio App.3d 487, 496.
 {¶ 13} The first prong of the analysis is to decide if Ohio has jurisdiction as provided in R.C. 3109.22(A). Under R.C. 3109.22(A), a juvenile court in the state of Ohio that has the jurisdiction to make a parenting determination shall exercise that jurisdiction only if one of the conditions specified in subsections (1) through (4) of the statute is met. Justis v. Justis (1998), 81 Ohio St.3d 312, 315. Once a court decides that it has jurisdiction, the second prong of the analysis is to determine whether Ohio should exercise that jurisdiction. The court may decline to exercise jurisdiction pursuant to R.C. 3109.25(A) if it finds that "it is an inconvenient forum to make a parenting determination under the circumstances of the case and that a court of another state is a more appropriate forum."
 {¶ 14} Here, there is no question that the juvenile court was authorized to exercise jurisdiction over the minor children by virtue of R.C. 3109.22(A)(1) and (2), which provide:
 {¶ 15} "(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:
 {¶ 16} "(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;
 {¶ 17} "(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships ***."
 {¶ 18} In the case sub judice, the minor children were born in Ohio and lived there until August 2000. On May 4, 2001, appellant filed a petition to register a foreign judgment and suit seeking modification of the out-of-state order in Texas. The minor children had been in Ohio since their birth and also had a significant connection to Ohio because their natural father resides in Ohio. Furthermore, their grandparents as well as other family members live in Ohio, their guardian ad litems are located in Ohio, and the supervisors for the Ohio visits are in Ohio. In its November 21, 2001 judgment entry, the juvenile court also determined that there was "available in Ohio substantial evidence concerning their present and/or future protection and relationships under R.C.3109.22(A)(2)." Thus, based on the record before us, Ohio was the home state of the minor children.
 {¶ 19} Furthermore, as to the second step of the analysis, a court with jurisdiction under the UCCJA may decline to exercise jurisdiction if it finds that Ohio is not a convenient forum for making the parenting determination pursuant to R.C. 3109.25(A), which states:
 {¶ 20} "(A) A court that has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a parenting determination under the circumstances of the case and that a court of another state is a more appropriate forum."
 {¶ 21} Furthermore, R.C. 3109.25(C) provides that:
 {¶ 22} "In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:
 {¶ 23} "(1) If another state is or recently was the child's home state;
 {¶ 24} "(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
 {¶ 25} "(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
 {¶ 26} "(4) If the parties have agreed on another forum that is no less appropriate.
 {¶ 27} In the instant matter, appellant made allegations that she was denied visitation based on abuse that took place in Ohio. Since her reason for terminating the visitation occurred in Ohio, and it is logical that the investigation regarding her allegations can be better addressed in Ohio, Ohio is a convenient forum. Therefore, it is our position that there was not an abuse of discretion. Appellant's first assignment of error lacks merit.
 {¶ 28} For her second assignment of error, appellant contends that the trial court denied her due process of law when it denied her request for a continuance and held a contempt hearing with less than one week notice to her.
 {¶ 29} The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court. State v. Lorraine
(1993), 66 Ohio St.3d 414, 423. The standard of review on appeal is whether the trial court abused its discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. An abuse of discretion connotes more than simply an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore,5 Ohio St.3d at 219. To determine whether the trial court abused its discretion, a reviewing court must weigh the potential prejudice to the defendant against the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.State v. Powell (1990), 49 Ohio St.3d 255, 259. Some of the objective factors that a reviewing court should consider include the following:
 {¶ 30} "`*** the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.'" In reDietrich (Dec. 12, 1997), 11th Dist. No. 96-G-2020, 1997 WL 799561, at 2, quoting Unger, 67 Ohio St.2d at 67-68. See, also, DeFranco v.DeFranco (Sept. 14, 2001), 11th Dist. No. 2000-L-147, 2001 WL 1077838, at 2.[2]
 {¶ 31} In the case at bar, after reviewing the record, it is our determination that the juvenile court failed to conduct a sufficient inquiry concerning these factors. On November 19, 2001, appellant's attorney filed a motion for continuance. Appellant did not receive notice until November 16, 2001. Appellant argues that in that time, she had to arrange for a flight from Texas, subpoena witnesses, and meet with her attorney to prepare a defense. Therefore, there was no evidence as to whether the request for continuance was in any way dilatory, purposeful or contrived, or sought solely in an effort to delay the proceedings. Since the notice was time-stamped November 14, 2001, and received by appellant on November 16, the motion for continuance was not untimely. Moreover, there was no evidence to suggest that granting a continuance would have inconvenienced or prejudiced the parties, witnesses, or opposing counsel.
 {¶ 32} As this court stated in DeFranco:
 {¶ 33} "As an appellate court, we are reluctant to second guess a trial court's handling of its docket and rarely reverse such rulings. Oftentimes during a case, events occur that are not readily apparent to a reviewing court justifying the actions taken by a trial court. However, without some indication in the record as to why a certain decision was made, we are left to speculate with respect to the reasons.
 {¶ 34} "Therefore, in most cases, the trial court must create a forum in which there is an opportunity for the litigants to address the Unger factors. Without such a forum, a court has no opportunity to place on the record its analysis of the issues and to explain its resolution."
 {¶ 35} Hence, even though the juvenile court may have been annoyed with the attitude of appellant, due process must be observed. Furthermore, R.C. 3109.23(B) and (C) require a court to give a nonresident party at least twenty days notice before scheduling any hearing in Ohio involving a parenting proceeding. Hence, it is our view that by failing to address the Unger factors, the trial court abused its discretion. Upon remand, although the result may remain the same, the process will have been safeguarded. Appellant's second assignment of error is well-founded.
 {¶ 36} For the foregoing reasons, appellant's first assignment of error is overruled, and appellant's second assignment of error is well-taken. Further, our disposition of appellant's second assignment of error renders appellant's third assignment of error moot. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed, and the matter is remanded for further proceedings consistent with this opinion.
JUDITH A. CHRISTLEY, J., concurs.
DIANE V. GRENDELL, J., concurs and dissents with concurring and dissenting opinion.
[1] Brittany was born June 28, 1990; Alyssa was born on January 28, 1993; and Carly was born August 15, 1995.
[2] Even though these factors originate from a criminal case, courts in this state have also applied them in civil actions.