## 66537. OSGOOD v. DENT.

DEEN, Presiding Judge.

Appellant Osgood, father of Jean Marie Osgood and former husband of appellee, appeals from the judgment of the Richmond County Superior Court removing custody of the minor child from him and awarding it to appellee. Appellant alleges that the judgment was improper because in making its ruling the trial court, by his own admission, relied on documents not in evidence and on telephone conversations with persons who were not called as witnesses in the proceedings and whom appellant consequently had no opportunity to cross-examine.

Under the terms of a 1978 Colorado divorce decree, appellant received permanent custody of Jean Marie. Subsequent to the divorce appellee married and moved to Georgia with the man with whom she had apparently had a liaison while still married to appellant. She was given liberal visitation rights, and Jean Marie usually spent her summers with her mother in Georgia.

At some time prior to a visitation period scheduled to begin in July 1981, there came to the attention of Colorado welfare personnel rumors of child abuse, with possible sexual connotations, concerning Osgood and Jean Marie. The state appointed a guardian ad litem and temporarily made Jean Marie a ward of the state. She was permitted to continue to live with her father, however. During the July 1981 visit the child intimated to her mother that her father had behaved in a questionable manner towards her, and the mother refused to return her at the end of the visitation period. The State of Colorado then filed a habeas corpus petition in Georgia demanding the child's return; this petition is apparently still pending.

In January of 1982 the State of Colorado dropped its charges against appellant and restored custody to him. In March of that year the mother filed a petition for change of custody in the Richmond County Superior Court, alleging that the father had not visited or supported the child since the previous July and had been charged in Colorado with child abuse and molestation. Appellant answered, alleging that the charges against him had been dropped, challenging the temporary custody order entered by the Richmond Superior Court, and moving for dismissal of appellee's petition. By order of September 29, 1982, the court awarded custody to the mother, with liberal visitation rights to the father. This court granted appellant's

discretionary appeal. *Held:*

1. We must first consider whether a Georgia court was authorized to take any action at all with regard to the custody of Jean Marie. "The general rule is that the court where the parent with legal custody resides has the exclusive right to award change of custody . . . This is true whether the legal custodian lives in another state . . . or in another county . . ., and irrespective of the physical presence of the child." *Matthews v. Matthews,* 238 Ga. 201 (232 SE2d 76) (1977). This rule is implemented by the Uniform Child Custody Jurisdiction Act (UCCJA), which Georgia has adopted and codified as OCGA § 19-9-40 et seq. (Code Ann. § 74-501 et seq.).

OCGA § 19-9-43 (a) (Code Ann. § 74-504) (UCCJA § 3) establishes the four bases for jurisdiction of child custody proceedings, whether initially or by modification: (1) the state is or has been within six months the child's "home state," as defined by the Act; (2) the child and at least one custody contestant have a significant connection with the state; (3) the child is physically present *and* has been abandoned or is in need of emergency protection from actual or threatened abuse or neglect; or (4) no other state has or accepts jurisdiction, *and* it is in the child's best interest for this state's courts to take jurisdiction. Paragraph (4) of subsection (a) is inapplicable to the facts here, and subsection (b) of the statute specifies that "physical presence . . . of the child or of the child and one of the contestants is not *alone* sufficient to confer jurisdiction on a court of this state to make a child custody determination" (emphasis supplied) under either paragraph (1) or paragraph (2). Clearly, then, the only possible statutory authority for a Georgia court assuming jurisdiction under the facts of this case is paragraph (3) (B) of subsection (a): physical presence coupled with emergency. The record shows that the mother alleged in her petition that the child was deprived and in need of protection because the father was under investigation on sexual abuse charges and had not visited or supported her since the preceding July. These allegations would at first blush appear sufficient to establish jurisdiction in the Richmond County Superior Court under OCGA § 19-9-43 (a) (3) (Code Ann. § 74-504).

Under OCGA § 19-9-54 (a) (Code Ann. § 74-506) (UCCJA § 14), however, "[i]f a court of another state has made a custody decree, a court of this state shall not modify that decree unless: (1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree; and (2) The court of this state has jurisdiction." Moreover, OCGA § 19-9-49 (Code Ann. § 74-510)

(UCCJA § 9) requires every party in a custody proceeding to state in his first pleading whether he knows of any pending custody proceeding in any state, and § 19-9-46 (Code Ann. § 74-507) (UCCJA § 6) requires the Georgia court to examine the pleadings and the child custody registry ( § 19-9-56 (Code Ann. § 74-517)) (UCCJA § 16) to determine the pendency of any other custody proceeding and if evidence of such is found, to stay its own proceedings. Neither party's pleadings contain the information required by § 19-9-49 (Code Ann. § 74-510), and the record gives no indication that the Richmond Superior Court on its own motion made the inquiries mandated by OCGA § 19-9-46 (Code Ann. § 74-507).

Furthermore, OCGA § 19-9-48 (b) (Code Ann. § 74-509) (UCCJA § 8) prescribes that "Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has . . . improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances." Because appellee alleged that the child was in need of emergency protection, the trial court was authorized under OCGA § 19-9-43 (a) (3) (B) (Code Ann. § 74-504) to take temporary jurisdiction and even to make an award of temporary custody. Under the statutory provisions cited, supra, however, the court was under a duty before proceeding further, and *a fortiori* before retaining jurisdiction to undertake to modify the out-of-state decree, to ascertain whether the allegations contained in appellee's petition regarding appellant's legal status in Colorado were valid, and whether the petitioner had complied with the statutory requirements and was entitled to bring further proceedings in the Georgia courts. According to the record, the Colorado charges had been dismissed and custody restored to appellant in January 1982, two months before the petition for permanent custody was filed in the Richmond Superior Court. See *Douse v. Douse,* 157 Ga. App. 524 (277 SE2d 807) (1981).

There is no evidence in this case that the Richmond Superior Court complied with the provisions of OCGA §§ 19-9-46, 19-9-48, 19-9-49, and 19-9-56 (Code Ann. §§ 74-507, 74-509, 74-510, 74-517), supra. As to the two-pronged requirement of § 19-9-54 (a) (Code Ann. § 74-515), only the second prong, *arguendo,* has been fulfilled; that is, that the Richmond County Superior Court at least arguably had jurisdiction under the jurisdictional prerequisites of OCGA § 19-9-43 (a) (3) (B) (Code Ann. § 74-504). Since the requirement of § 19-9-54 (Code Ann. § 74-515) is stated in the conjunctive, however, and the

record discloses no reason why it should have "appear[ed] ... that the [Colorado] court which rendered the decree does not now have jurisdiction," we must conclude that the Richmond Superior Court lacked authority to modify the custody decree and erred in undertaking to do so. See *Youmans v. Youmans,* 247 Ga. 529, 532 (276 SE2d 837) (1981), in which the Supreme Court of Georgia, relying on *Yearta v. Scroggins,* 245 Ga. 831 (268 SE2d 151) (1980), held that under Ga. Code Ann. §§ 74-514 and 74-515 (OCGA §§ 19-9-53, 19-9-54), "Once the threshold jurisdictional requirements for the out-of-state decree have been established, ... the decree should be recognized and enforced by the courts of this state." See also *Douse v. Douse,* supra.

2. Even if, *arguendo,* the Richmond Superior Court properly exercised jurisdiction over the custody proceedings, the court's acknowledged reliance on documents and testimony not in evidence was harmful error and highly prejudicial to appellant, thereby denying him the right to a thorough and sifting cross-examination of those offering evidence against him. The September 29, 1982, order awarding permanent custody to appellee concluded as a matter of law that "a substantial and material change of conditions has occurred since the divorce" and that "it would be in the best interest of the child to award custody to the [mother]." The basis for these conclusions was not stated in the order. On the preceding July 2, however, the day following the custody hearing, the court saw fit to convene the parties' attorneys and to make for the record the statement from which the following excerpts are taken:

"Both parties ... waived ... the court reporter ..., but I feel like it's necessary for the court reporter to perfect the record on what my decision will be and some explanation of that decision ... [T]he court did feel it important ... to be totally honest with the parties, to point out the considerations of the court in making its decision; and if these are the basis of an appeal and a possible reversal ..., then I think that ... they need to know what the court considered. . . [T]he court feels that without any question, the ruling ... is in the best interest of the child. I mean, that's just a very strong feeling that I have in the case ...

"Now, the point that I want to make in addition to the evidence which was pointed out ... is that the court is familiar with a previous proceeding ... I'm going from recollection of what was done and ... filed ... and to some extent relying on that case and those conferences ... Now, as I say, if that's error, then ... it may or may not be the basis of an appeal ... I think the petitioner [in the earlier case] was labeled 'the State of Colorado,'. . . [there was] investigation by the State of Colorado into the deprivation of the child ... I called [the attorney representing the State of Colorado in the earlier case] in order to

clarify my understanding of this matter, not to take any additional testimony. But again, if that's error, to have talked to her and not give the counsel an opportunity to cross-examine, then that's error and subject to possible reversal . . . There was certainly some doubt in the evidence yesterday as to whether . . . [the mother] may not have instituted that or planted that seed [the father's misconduct] in the child's mind, . . . [b]ut . . . the court finds that seed was not planted by the mother . . . In a habeas corpus proceeding the court under the . . . evidence in the case would have certainly have to have found that legal custody was in the State of Colorado and would have had to grant the habeas corpus . . . [but t]he investigation was still underway out in Colorado, and they asked that we have no hearing, and that they were not pushing that issue . . . and [said] do not touch this petition . . . That's the reason that action is still pending today . . .

"[T]his [January 18, 1982, Colorado court order] appeared to be a dismissal of the action [pursuant to the child abuse charges] and a return of the custody to the father . . . So at this point, the child would have been returned to the father . . . I had received a telephone call pursuant to [the UCCJA] from the judge [in Colorado], requesting that I stay the transfer of the child back to the father if that were my ruling . . .

"I'm not encouraging litigation, and I'm not suggesting appeal, but I just felt like to come in and . . . coldly state, 'The court's granting the petition and denying the motion' and not give you anything more would be improper, when I considered matters that were outside of the actual hearing, but . . . which were previously presented to the court . . ." The foregoing can leave little doubt that the custody determination was based not on properly admitted evidence but on consideration of extrajudicial conversations and documents, in combination with the court's subjective feelings.

Under the provisions of OCGA §§ 19-9-62 (Code Ann. § 74-523) (UCCJA § 22) and 19-9-58 (Code Ann. § 74-518) (UCCJA § 18), respectively, the court could have obtained certified copies of any court record or other relevant document pertaining to the Colorado proceedings and could have ordered that testimony of appropriate persons be taken in Colorado by deposition or otherwise for introduction into evidence in the proceeding below. Had the court availed itself of these provisions, appellant's constitutional right to cross-examination would have been safeguarded. As the Supreme Court held in *Camp v. Camp,* 213 Ga. 65, 66 (97 SE2d 125) (1957), when the court considers facts not properly in evidence, "the other party . . . has rights that can not be protected fully if he is [thus] denied the privilege of cross-examination. We know that [citizens'] rights and liberties are jeopardized when courts abandon the tried

and proven court procedure of admitting only relevant evidence and producing witnesses who are subject to cross-examination." See also *In re C. C. B.,* 164 Ga. App. 3 (296 SE2d 198) (1982). Because so fundamental a right was denied appellant, we must reverse the judgment of the court below.

*Judgment reversed. Banke and Carley, JJ., concur.*

DECIDED JULY 11, 1983.

*C. Thomas Huggins,* for appellant.
*Douglas J. Flanagan,* for appellee.