294 Ga. 787
FINAL COPY

S13A1475.  CML-GA SMYRNA, LLC v. ATLANTA REAL ESTATE
INVESTMENTS, LLC et al.

HINES, Presiding Justice.

Premier Petroleum, Inc. appeals the confirmation of the sale of a gas station held in receivership, entered after the superior court determined that a restrictive covenant Premier signed with a third party to encumber the property was unenforceable.  For the reasons that follow, we affirm.

Arun Mehta, on behalf of Atlanta Real Estate Investments ("AREI"), obtained a loan from Haven Trust Bank, predecessor-in-interest of CML-GA Smyrna, LLC ("CML-GA"), to operate a gas station, and CML-GA obtained a first priority security interest in AREI's gas station property.  After AREI defaulted on the promissory note, CML-GA petitioned the superior court for the appointment of Trigild, Inc. ("Trigild") as the receiver over the gas station.  See OCGA § 9-8-1 et seq.  The motion was granted on February 8, 2012, and on July 11, 2012, the court entered an order allowing Trigild to market and sell the gas station.

Trigild found a potential buyer for the gas station, ALCS Properties, LLC

("ALCS"), but the purchase was halted when it was discovered that there was a recorded restrictive covenant on the property. The covenant had been recorded on April 21, 2007, and was the product of an exclusive supply agreement between Mehta (individually and on behalf of Shirdi Sai, LLC), and Premier Petroleum, Inc., a supplier of gasoline and other petroleum products. Signed on April 19, 2007, the supply agreement was incorporated into the restrictive covenant by reference. The covenant stipulated that only Premier's petroleum products could be sold at the gas station property for ten years, and that the covenant was to run with the land. When the restrictive covenant was signed, neither Mehta or Shirdi Sai, LLC, had any ownership interest in the property to be encumbered; indeed, neither has ever had an ownership interest in it.

Trigild subsequently moved in the superior court for an order confirming the proposed sale of the gas station to ALCS, free and clear of the restrictive covenant. In support of its motion, Trigild argued that the covenant was unenforceable, or in the alternative that equity demands that the restrictive covenant be set aside because the property otherwise would be unmarketable. Premier was served with that motion; it did not formally intervene in the

2

proceeding, but filed a response, and appeared at the confirmation hearing. After the hearing, the court granted Trigild's motion and approved the sale of the property free and clear of the restrictive covenant, ruling, inter alia, that Mehta and Shirdi Sai, LLC had no authority to encumber the property with a restrictive covenant, having never owned the property.

1. Premier contends that the superior court's order ruling that the restrictive covenant was invalid violated its rights to due process under the Fourteenth Amendment of the United States Constitution and the Georgia Constitution of 1983, Art. I, Sec. I, Par. I.

> The constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard. [Cit.] Neither the federal nor the state constitution's due process right guarantees a particular form or method of procedure, but is satisfied if a party has "reasonable notice and opportunity to be heard, and to present [its] claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. [Cits.]

*Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (518 SE2d 126) (1999).

There was no violation of due process. Premier was served with a copy of Trigild's motion for confirmation of the proposed sale more than six weeks before the hearing thereon. The motion clearly stated that Trigild was seeking

a ruling that the covenant be declared invalid and no longer to run with the land, and that "the proposed sale to ALCS be made free and clear of the Covenant." Premier was served with a notice of the scheduled hearing more than 30 days before it took place; Premier filed its response to the motion for confirmation more than two weeks before the hearing, and appeared at, and fully participated, in the hearing. The trial court did not prevent Premier from presenting witnesses or other evidence, or curtail the full presentation of Premier's arguments at the hearing. See *Hafer v. Lowry*, 320 Ga. App. 76, 78 (739 SE2d 84) (2013); *CRS Sirrine, Inc. v. Dravo Corp.*, 213 Ga. App. 710, 714 (1) (445 SE2d 782) (1994).

Premier also argues that it was a violation of due process for the trial court to alter its property rights without formally making it a party to the case. However, as noted, the procedure followed here amply afforded Premier due process. Further, Premier did not avail itself of the provisions for it to intervene as a formal party in the case. See OCGA § 9-11-24.[1] Although Premier

---

[1] OCGA § 9-11-24 reads:

(a) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action:
    (1) When a statute confers an unconditional right to intervene; or
    (2) When the applicant claims an interest relating to the property or

contends that if it had been formally made a party to the case, it would have been able to engage in a period of pre-hearing discovery, it does not now suggest what evidence it might be able to discover that would be calculated to yield a defense to the conclusion that its recorded covenant was completely invalid.

2. The trial court's order appointing the receiver designated "Trigild, Inc." to serve in that role. Premier contends, however, that no such entity exists, as the Georgia corporation "Trigild, Inc." was administratively dissolved before the order was issued, and therefore could not legally operate as receiver;

transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive intervention. Upon timely application anyone may be permitted to intervene in an action:
(1) When a statute confers a conditional right to intervene; or
(2) When an applicant's claim or defense and the main action have a question of law or fact in common.
In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Code Section 9-11-5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene.

Premier concedes that "Trigild, Incorporated" is the entity that has been acting as receiver and is an out-of-state corporation registered to do business in Georgia.

Of course, "Inc." is an abbreviation of "Incorporated." See Black's Law Dictionary, p. 763 (7th ed. 1999). And, in any event, "a mere misnomer of a corporation in a written instrument is not material or vital in its consequences, if the identity of the corporation intended is clear or can be ascertained by proof." *Darling Intl., Inc. v. Carter*, 294 Ga. 455, ___, n. 3 (___ SE2d ___ ) (2014) (Citations and punctuation omitted.) Here, the identity of the corporation intended to be named as receiver was clear, and there was no abuse of the court's discretion in confirming the proposed sale, despite the failure to designate "Trigild, Incorporated" as receiver in the court's initial order. See *Hall v. Taylor*, 133 Ga. 606 (66 SE 478) (1909).[2]

3. Premier urges that the sale could not be confirmed because no sale of the property had yet taken place. However, this is not so. Confirmation of a proposed receiver's sale can, and sometime must, occur before the sale is

---

[2] Premier asserts that Trigild, Incorporated "may not," by virtue of its status as a foreign corporation, have the power to seek confirmation of the sale in its role of receiver, but cites no authority for such a suggestion.

executed. See *Penny v. Cash*, 201 Ga. 215 (39 SE2d 397) (1946); *Sims v. Ramsey*, 186 Ga. 732 (2) (198 SE2 770) (1938); *Hurt Bldg., Inc. v. Atlanta Trust Co.*, 181 Ga. 274 (182 SE 187) (1935); *Smith v. Roberts*, 106 Ga. 409 (32 SE 375) (1899). Compare *Leggett v. Ogden*, 248 Ga. 403 (284 SE2d 1) (1981). Indeed, such a sale cannot be deemed to be consummated until confirmed. See OCGA § 23-4-35.[3] The court did not abuse its discretion in confirming the sale before the contract for sale was executed. See *Hall*, supra.

Premier also argues that confirmation could not take place because there was a clause in the sale agreement stating that the agreement was contingent upon CML-GA's approval prior to closing. Counsel for CML-GA appeared at the confirmation hearing, stated approval of the agreement, and urged the court to confirm the sale. In this circumstance, there was no abuse of the trial court's discretion in confirming the proposed sale. Hall, supra.

Judgment affirmed. All the Justices concur.

---

[3] OCGA § 23-4-35 reads:

Sales under decrees in equity shall be subject to confirmation by the judge, who has a large discretion vested in him in reference thereto. Such sales shall not be consummated until confirmed by him.

Decided March 17, 2014.

Equity. Gwinnett Superior Court. Before Judge Turner.

<u>Webb, Tanner, Powell, Mertz & Wilson, Anthony O. L. Powell</u>, for appellant.

<u>James, Bates, Brannan & Grover, Michael A. Dunn, Schulten, Ward & Turner, Kevin L. Ward, J. Zachary Zimmerman</u>, for appellees.