301 Ga. 211
FINAL COPY

S17F0619.  ALTMAN v. ALTMAN.

NAHMIAS, Justice.

We granted a discretionary appeal in this divorce case to decide whether the trial court, after interviewing the parties' two children in chambers without the parties or counsel present, erred in relying on information from those interviews in making a final custody determination and entering the divorce decree, erred in denying the parties and counsel access to the court reporter's transcript of the interviews, and erred in sealing the transcript.  As explained below, we conclude that the trial court improperly relied on information that was not available to the parties or counsel and improperly sealed the transcript of the court's in-chambers interviews without complying with the procedures for sealing court records set forth in the Uniform Superior Court Rules.  We therefore reverse the trial court's sealing order, vacate the final custody order and divorce decree, and remand the case with direction.

1.     The parties married in March 2004 and have two daughters, born in 2005 and 2007.  The parties separated in late December 2011 after appellee Angela Altman (Mother) accused appellant Christopher Altman (Father) of twice having their older daughter touch him inappropriately one evening while the parties and the children were watching television together at home.  The local Department of Family and Children Services investigated and found the molestation allegation to be unsubstantiated, but Mother nevertheless filed three ex parte applications for temporary protective orders against Father, all of which were dismissed for lack of evidence.

On February 6, 2012, Father filed a complaint for divorce, and Mother then filed an answer and counterclaim for divorce.  The trial court appointed a psychologist to conduct a psychological custody evaluation of the family and temporarily awarded Mother primary physical custody of the children with Father having restricted visitation.   In May 2013, after an extensive investigation, the custody evaluator submitted her 30-page report, which the trial court sealed from public access.[1]  The report concluded that Mother had trouble

---

[1] This was one of many documents that the trial court sealed during the proceedings below, often with the docket noting only "Order Sealing Materials Within the Record" and brief sealing orders similar to the one discussed below.

separating fantasy from reality and was so convinced that Father had molested their older child that she could not inhibit what she said to and in front of the girls. The custody evaluator expressed serious concerns that Mother had coached the children regarding the alleged molestation and recommended that Father be awarded primary physical custody with Mother having limited visitation and brief daily calls with the children to be monitored by Father.

In September 2013, the trial court held a three-day bench trial, but two months later, the court entered an order saying that it needed more information to decide what was in the best interests of the children. In March 2014, the court ordered the parties to undergo psychosexual evaluations and attend co-parenting therapy and appointed Dr. Allison Hill, a psychologist and attorney, as the court's expert to provide reunification and transition therapy for Father and the children. In July 2014, after reviewing the psychosexual evaluations and therapy reports and holding a hearing, the court awarded Father "temporary sole physical custody" of the children with Mother having limited supervised visitation. The court ordered that the reunification and transition therapy with Dr. Hill continue and conditioned Mother's visitation on her receiving "psychological treatment to address the concerns raised by this Court, including

the overprotectiveness in which she parents the children and the lack of insight and understanding that she has presented to each professional appointed to and involved in this case."

In May 2015, based on reports from Mother's therapist, the trial court granted Mother unsupervised visitation but ordered her therapist to prepare a report addressing Mother's "progress in relation to the concerns expressed by the other mental health professionals appointed to and involved in this case." Mother's therapist then filed an additional report. In October 2015, the court set a final hearing for the next month and instructed the parties to appear with the children. A few days before the final hearing, Dr. Hill submitted her fourth progress report to the court, which advised that Father was diligent about the children's treatment and supportive of them and their relationship with Mother, while Mother continued to try to undermine their relationship with Father and to have inappropriate conversations with the children in such a way as to potentially interfere with the children's ongoing development.

At the final hearing on November 4, 2015, the trial court announced its intention to interview each child in chambers without the parties, Father's

counsel, or the court reporter hired by Father present.[2]  Father objected to the court's interviewing the children at all, but he agreed that if the children were going to be interviewed, it should be done in chambers without the parties or counsel present.  Father insisted, however, that his court reporter be there to create a record.  The court agreed to allow the court reporter but said that the transcript of the interviews would be sealed.  Father again objected, arguing that the court could not base its ruling on information gained during the interviews if the court denied the parties and counsel access to the transcript.  The court then met with each child separately in chambers for about 20 minutes apiece.

Shortly after the final hearing, the trial court contacted Father's court reporter and instructed him to prepare a transcript of the in-chambers interviews for the court's eyes only.  On November 16, 2015, the court reporter certified that transcript and delivered it to the court in an envelope labeled "HIGHLY CONFIDENTIAL" and "FOR JUDGE BARRIE'S EYES ONLY."  The parties were not notified, no sealing order was entered, and the court's docket did not reflect any filing.  On December 31, 2015, the court entered a lengthy "Final

_____

[2]  After the trial court allowed Mother's third counsel to withdraw in August 2015, she has represented herself, including at the final hearing and on appeal.

Order" that granted Mother primary physical custody of the children starting at the end of the school year in June, with Father having regular visitation. The order also addressed equitable division, alimony, child support, and other matters not at issue in this appeal.

On January 5, 2016, the trial court entered a one-page divorce decree, which among other things found that it was in the children's best interest for Mother to have primary physical custody. The next day, an attorney for Father contacted the court reporter, who agreed to prepare a transcript of the final hearing with the exception of the trial court's in-chambers interviews of the children. The court reporter explained that the court had contacted him and obtained a transcript of the interviews at the court's expense and that he had been instructed to mark the transcript "'highly confidential' and for [the court's] eyes only." The court reporter said that he could not give Father a transcript of the final hearing that included the in-chambers interviews without written authorization from the court. Later that day, the trial court signed an order, which was filed a week later on January 13, 2016, concluding that "the within enclosed Confidential Excerpts from November 4, 2015, shall be sealed and not available for disclosure as part of the public record."

On January 29, 2016, the court reporter certified the transcript of the final hearing. The title page says that confidential excerpts have been redacted and included in a separate volume marked highly confidential and for the court's eyes only, and a "Reporter's Note" in the transcript says, "At this point in the hearing, proceedings occurred which have been removed from this transcript per instruction of the Court." Also on January 29, Father filed an application for discretionary appeal, which this Court granted under our former Rule 34 (4). Father then filed a timely notice of appeal. After a lengthy delay, the trial court clerk transmitted the record, including the transcript of the in-chambers interviews and numerous other sealed items, and the case was docketed to this Court's term beginning in December 2016. The case was orally argued on April 17, 2017.[3]

2. This Court and the Court of Appeals have long held that trial courts, in reaching judgments on child custody, cannot rely on evidence that was not

---

[3] Under the Appellate Jurisdiction Reform Act of 2016, Ga. L. 2016, p. 883, the Court of Appeals is given subject matter jurisdiction over "[a]ll divorce and alimony cases" in which a notice of appeal or application to appeal is filed on or after January 1, 2017. Id. §§ 3-1 (codified at OCGA § 15-3-3.1 (a) (5)), 6-1 (c) (effective date). Thus, appeals in future cases of this sort will go to the Court of Appeals instead of this Court. See Dallow v. Dallow, 299 Ga. 762, 771 (791 SE2d 20) (2016).

available to the parties or their counsel. See, e.g., <u>Kohler v. Kromer</u>, 234 Ga. 117, 118-119 (214 SE2d 551) (1975); <u>Peeples v. Newman</u>, 209 Ga. 53, 57 (70 SE2d 749) (1952); <u>Kilgore v. Tiller</u>, 194 Ga. 527, 528-529 (22 SE2d 150) (1942); <u>Osgood v. Dent</u>, 167 Ga. App. 406, 409-410 (306 SE2d 698) (1983).[4] Here, although the trial court remarked after its in-chambers interviews of the children that it did not "think [they were] going to make a difference with regard to what the Court does," the court then indicated otherwise in the "Findings of Fact" in its final custody order:

> In light of [the court-appointed expert] reports related to the Mother's improper influence, the Court decided to interview the girls . . . and did not find frightened girls or girls overly influenced by their mother, as Dr. Hill['s] reports appear to suggest. The girls were well adjusted and . . . ready to move on to the next phase of life. If the mother was badgering the girls, they did not so represent during the interview. They were not overwhelmingly aligned with the mother. They indicated love for both parents and were prepared to stay with either parent.

---

[4] See also USCR 24.5 (permitting consultation by trial courts with the children involved in child custody disputes but stating that "[a]t any such consultation, attorneys for both parties may be in attendance," and that "[u]pon request, the proceedings in chambers shall be recorded"); <u>Williams v. Stepler</u>, 221 Ga. App. 338, 339 (3) (471 SE2d 284) (1996) (noting the importance of having a court reporter present "to preserve the court's interview with the child, and the child's statements to the court"). This is not to say that material which a trial court considers in reaching a custody judgment may never be sealed from the public in accordance with the right of access to court records and the sealing procedures specified in the Uniform Superior Court Rules, only that such material cannot be sealed from the parties and their counsel and yet relied on by the court in reaching its judgment.

8

And in its "Conclusions of Law" regarding custody, the court said:

> [O]n November 4th, the Court scheduled a Final hearing and requested the girls be brought to Court. The Court interviewed the girls and found that they are well adjusted and thriving. They are definitely not afraid of their father. They indicate that they are prepared to stay in the primary control of either parent as long as they can spend quality time with the other.

It is apparent from this order, as well as other comments the court made at the final hearing after completing the interviews, that in deciding to switch primary physical custody of the children from Father to Mother in the final order, the court took into account what the children said in chambers. Father and his counsel had no opportunity to review, explain, or rebut that information before the court entered the final custody order and divorce decree — or even now on appeal, as the transcript of the in-chambers interviews still has not been made available to them. Indeed, Mother's brief concedes that "the trial court's own words are sufficient to demonstrate reliance" on the interviews. Accordingly, we vacate the final custody order and the divorce decree and remand the case to the trial court with direction to make a custody determination that is not based on evidence which is not available to the parties or counsel and regarding which they have not had an opportunity to be heard.

9

3.     When the trial court entered the final custody order and the divorce decree, the record in this case did not reflect the existence of a transcript of the court's in-chambers interviews of the children, even though that transcript had been delivered to the court at the court's direction six weeks earlier.  It was improper for the trial court to keep this material entirely "off the record."  And as with many of the materials sealed in this case, the procedure the trial court subsequently followed in sealing the interview transcript did not comply with the requirements of the Uniform Superior Court Rules.

The sealing of court records is addressed in USCR 21 through 21.6, which were designed to preserve the traditional common law right of access to court records and to establish specific procedures that courts must follow before shielding such records from public view.  See Atlanta Journal & Atlanta Constitution v. Long, 258 Ga. 410, 412 (369 SE2d 755) (1988).  Focusing on the rules relevant to this case, USCR 21 says that "[a]ll court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below."  USCR 21.1 then says that upon motion of a party or on the trial court's own motion and "after hearing, the court may limit access to court files respecting that action."  However, "[a]n order

10

limiting access shall not be granted except upon a finding that the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest," USCR 21.2, and the court is required in its sealing order to "specify the part of the file to which access is limited, the nature and duration of the limitation, and the reason for limitation," USCR 21.1. It is not enough for the court simply to recite in the sealing order the standard set out in USCR 21.2. Rather, the court must set forth findings that explain how the invasion of privacy threatened by public access to the sealed materials differs from the type of privacy invasion that is suffered by all parties in civil suits. See In re Motion of Atlanta Journal-Constitution, 271 Ga. 436, 438 (519 SE2d 909) (1999). Finally, Rule 21.3 authorizes ex parte temporary limitations of access for no longer than 30 days, but only "[u]nder compelling circumstances" and "upon motion accompanied by supporting affidavit."

The record on appeal indicates that the trial court here did not hold a proper hearing, after reasonable notice, on whether it should seal the transcript of its in-chambers interviews of the parties' children, and for this reason alone the court's January 13, 2016 sealing order cannot stand. See In re Motion of Atlanta Journal-Constitution, 271 Ga. at 438 ("The requirement of a hearing

11

held upon reasonable notice is indispensable to the integrity of the process mandated for limiting access to court records . . . .").  Moreover, this sealing order, which was entered by the court sua sponte nearly two months after the court received the transcript and a week after Father's court reporter denied him access to the transcript at the court's direction, said in its entirety only:

> It appears that the matters contained herein are those of a nature that are protected and privileged from disclosure as public record.  Therefore, on the Court's own Motion and for good cause shown, it is hereby **ORDERED, ADJUDGED and DECREED** that the within enclosed <u>Confidential Excerpts from November 4, 2015</u> shall be sealed and not available for disclosure as part of the public record of the above-captioned case by the Order of this Court, and further that said material shall not be unsealed or disclosed without specific and subsequent order of the Court upon written request to do so.

The court's conclusory findings that the transcript is "of a nature that [is] protected and privileged from disclosure as public record," and that there has been "good cause shown," are insufficient to support a restriction on public access to court records, much less a restriction on access by the parties litigating the case.  See <u>In re Motion of Atlanta Journal-Constitution</u>, 271 Ga. at 438.  See also <u>Long</u>, 258 Ga. at 414 (3) (holding that the trial court's incantation in a sealing order of "the privacy interests of all the parties" and other general

12

policies was insufficient to support a sealing order). Accordingly, we reverse the order sealing the transcript of the court's in-chambers interview of the parties' children. See Wall v. Thurman, 283 Ga. 533, 534-535 (661 SE2d 549) (2008) (holding that the trial court erred in entering a sealing order without notice and a hearing and without making the necessary findings of fact). We do not foreclose the possibility on remand that the transcript could be sealed from the general public by proper order, but that must be determined after hearing and in accordance with the governing rules and case law.

Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur.

Decided May 15, 2017.

Domestic relations. DeKalb Superior Court. Before Judge Barrie.

Aisha Blanchard Collins; Jean M. Kutner; Richardson Bloom & Lines, Daniel A. Bloom, for appellant.

Angela Altman, pro se.