**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 18, 2020**

# In the Court of Appeals of Georgia

A20A1007. SPRUELL v. SPRUELL.

DILLARD, Presiding Judge.

Joshua and Tamara Spruell married in 2006, and had a son nearly one year later. While Tamara raised their son, Joshua served in the United States Navy. And during his time in the Navy, Joshua deployed to Iraq and Afghanistan and suffered combat-related injuries. After Joshua's discharge, the couple divorced. Joshua now appeals the amended final judgment in his divorce action, arguing that the trial court erred in (1) treating his military disability pension as divisible property (in violation of federal law), (2) awarding Tamara alimony despite her never asserting such a claim, (3) failing to support a deviation from the child-support guidelines with findings of fact, and (4) basing its custody decision on an in-chambers interview with the couple's son, despite not providing a transcript of that interview. For the reasons

set forth *infra*, we reverse the trial court's award of alimony, vacate its ruling as to child support and custody, and remand the case for further proceedings consistent with this opinion.

Viewing the evidence in the light most favorable to the trial court's rulings,[1] the record shows that Joshua and Tamara married on December 5, 2006. One month prior to their marriage, Joshua enlisted in the U.S. Navy and ultimately served as a medic. In October 2007, the couple had a son. And while Joshua continued his service in the Navy, Tamara raised their child in St. Marys, Georgia. For six months, in a period spanning part of 2008 to 2009, Joshua served in Iraq. And during that deployment, he suffered an injury from the blast of an improvised explosive device ("I.E.D."). Nevertheless, Joshua continued his service, and in 2012, he deployed to Afghanistan for eight months, where he again suffered an injury as a result of an I.E.D. blast. In 2013, Joshua returned from Afghanistan to a naval base in Port Hueneme, California, where he served for nearly four more years, while Tamara and their son remained in Georgia.

---

[1] *See Gibson v. Gibson*, 301 Ga. 622, 624 (801 SE2d 40) (2017) ("In reviewing a bench trial, we view the evidence in the light most favorable to the trial court's rulings, defer to the trial court's credibility judgments, and will not set aside the trial court's factual findings unless they are clearly erroneous.").

On April 28, 2017, the Navy involuntarily retired Joshua, having determined that his combat-related injuries rendered him unable to perform his current duties. Specifically, the Navy rated Joshua's disability at 70 percent, which allowed him to receive 70 percent of his base pay. And at that time, because he had only served a little over ten years in the military, Joshua was not eligible for longevity retirement compensation, which required at least 20 years of service.[2] But in light of his injuries, he *was* eligible to receive Military Disability Retirement. And in June 2017, he was given the option of waiving a portion of this retirement and, instead, receiving tax-free Veterans Disability Compensation—which he did, as it significantly increased his income.[3] Additionally, because of his injuries, Joshua was eligible for and received Combat Related Special Compensation.[4]

In June 2017, Joshua moved back to Georgia, at which point, he and Tamara agreed to a formal separation and discussed obtaining a divorce. Consequently, on October 17, 2017, Joshua filed a complaint for divorce (which was later amended), in which he sought custody of the couple's son and child support from Tamara.

---

[2] *See* 10 USC § 8327 (a) (2).

[3] *See* 38 USC § 5305.

[4] *See* 10 USC § 1413a.

3

Tamara filed an answer and counterclaim, seeking an equitable division of the property, child custody, child support, payment of marital debts, and attorney fees. The case then proceeded to a bench trial, during which Joshua and Tamara testified. The trial court also conducted an in-chambers interview of the couple's 11 year old son, with neither parent nor their counsel present. In addition, Tamara argued to the trial court that Joshua's military disability compensation was a marital asset subject to equitable division.

At the conclusion of the bench trial, the trial court took the matter under advisement. But concerned that the trial court seemed persuaded by Tamara's argument regarding the divisibility of his disability compensation, Joshua filed a motion to reopen the evidence, requesting that he be allowed to demonstrate otherwise. Tamara filed a response in opposition, and the trial court denied Joshua's motion. Subsequently, on May 23, 2019, the trial court issued a "Final Judgment Decree of Divorce," which, *inter alia*, awarded joint legal and physical custody of the couple's son and directed that the child live in the marital home with Joshua, but also provided that Tamara would have as close to equal time as possible. But noting that Joshua had a monthly income of $7,896 (while Tamara's was $4,086), the trial court declined to award him any child support. Finally, the trial court found that when

Joshua elected to received disability compensation instead of military retirement, he converted a marital asset into a non-marital asset. And in consideration of this "conversion," the court awarded Tamara lump-sum alimony in the amount of $60,000.

Immediately thereafter, Joshua filed a motion for new trial, arguing that the trial court erred in failing to award child support and in awarding Tamara alimony based on its finding that Joshua's military disability compensation was essentially a marital asset that he converted. In addition, Joshua filed a motion to unseal the transcript of the trial court's in-chambers interview with the couple's son, but the court denied the motion. In doing so, the trial court explained that the court reporter misplaced the recording of the interview and, thus, could not create a transcript. Subsequently, the trial court conducted a hearing on Joshua's motion for new trial, during which Joshua presented testimony from an attorney with significant experience in the law pertaining to military benefits. This attorney explained to the court that Joshua's disability compensation was not a divisible asset under federal law. A few weeks after the hearing, the trial court issued an order, noting that while it agreed with Joshua's argument regarding the divisibility of his military disability compensation, it would use its power to set aside an order within the same term of

court to amend the final judgment rather than grant a new trial. And in its "Amended Final Judgment Decree of Divorce," although the trial court acknowledged that Joshua's disability compensation was not divisible, it nonetheless—after citing the statutory requirements and the disparity between Joshua and Tamara's incomes—awarded Tamara $30,000 in lump-sum alimony. Joshua, thereafter, filed an application for discretionary appeal, which we granted. This appeal follows.

In the appellate review of a bench trial, we will not set aside the trial court's factual findings "unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses."[5] But when a question of law is at issue, we review the trial court's decision *de novo*.[6] With these guiding principles in mind, we turn now to Joshua's specific claims of error.

1. Joshua first contends that the trial court erred in treating his military disability pension as divisible property when it awarded Tamara $30,000 in lump-sum

---

[5] *Patel v. Patel*, 285 Ga. 391, 391 (1) (a) (677 SE2d 114) (2009) (punctuation omitted); *see supra* note 1.

[6] *See, e.g.*, *Colbert v. Colbert*, 321 Ga. App. 841, 841 (1) (743 SE2d 505) (2013); *see also Brooks-Powers v. Metro. Atlanta Rapid Transit Auth.*, 260 Ga. App. 390, 390 n.1 (579 SE2d 802) (2003) ("We owe no deference to a trial court's ruling on questions of law and review such issues de novo.").

alimony in its Amended Final Judgment, arguing that doing so violated federal law. But given the trial court's explicit acknowledgment that the disability pension was *not* divisible, we disagree with this contention as premised.

In *Howell v. Howell*,[7] the Supreme Court of the United States noted that the Uniformed Service Former Spouses' Protection Act provides that "a State may treat as community property, and divide at divorce, a military veteran's retirement pay."[8] But the *Howell* Court also explained that "[t]he [Act], however, exempts from this grant of permission any amount that the Government deducts 'as a result of a waiver' that the veteran must make 'in order to receive' disability benefits."[9] Accordingly, the *Howell* Court confirmed that it previously held that "a State cannot treat as community property, and divide at divorce, this portion (the waived portion) of the veteran's retirement pay."[10] Indeed, as the *Howell* Court succinctly reiterated,

---

[7] 581 U.S. ___ (137 SCt. 1400, 197 LE2d 781) (2017).

[8] *Id.* at 1402; *see* 10 USC § 1408 (c) (1); *see generally Michel v. Michel*, 286 Ga. 892, 893-94 (1) (692 SE2d 381) (2010) (providing background of the Act).

[9] *Howell*, 137 SCt. at 1402; *see* 10 USC § 1408 (a) (4) (B).

[10] *Howell*, 137 SCt. at 1402; *see Mansell v. Mansell,* 490 U.S. 581, 594-95 (III) (109 SCt. 2023, 104 LE2d 675) (1989).

"[F]ederal law completely preempts the States from treating waived military retirement pay as divisible community property."[11]

And here, in its initial Final Judgment and Decree of Divorce, the trial court certainly overstepped its authority and ran afoul of the *Howell* decision in (1) ruling that when Joshua elected to received disability compensation instead of retirement, he converted a marital asset into a non-marital asset, and (2) awarding Tamara $60,000 in alimony on that basis.[12] But in its Amended Final Judgment and Decree of Divorce, the trial court reversed course and explicitly acknowledged that it could "neither grant [Tamara] a portion of [Joshua's] disability payments nor consider those payments when making its decision regarding alimony." Thus, we take the trial court

---

[11] *Howell*, 137 SCt. at 1405 (II).

[12] *See Howell*, 137 SCt. at 1405-06 (II) (holding that a state court may not order a veteran to indemnify a divorced spouse for the loss in the divorced spouse's portion of the veteran's retirement pay caused by the veteran's waiver of retirement pay to receive service-related disability benefits); *Mansell*, 490 U.S. at 594-95 (III) (determining that military retirement pay that had been waived by the former husband in order to receive veterans' disability benefits was not community property divisible upon divorce); *Phillips v. Phillips*, 347 Ga. App. 524, 529-30 (3) (820 SE2d 158) (2018) (holding that, under federal statute and *Howell* decision, military retirement pay that had been waived by husband in order to receive veterans' disability benefits was not marital property divisible upon divorce).

at its word and do not agree with Joshua that it treated his military disability pension as divisible property.

2. Joshua also contends that the trial court erred in awarding Tamara alimony despite her never asserting such a claim. We agree.

As noted by the Supreme Court of Georgia, "[t]he constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard."[13] Furthermore, neither the federal or Georgia's due process right

> guarantees a particular form or method of procedure, but is satisfied if a party has reasonable notice and opportunity to be heard, and to present its claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it.[14]

In this matter, Tamara did not assert a claim for alimony in her counterclaims for divorce, nor did she ever amend her counterclaims. Moreover, Tamara never argued for alimony during the bench trial or presented evidence in support of such a claim. In fact, alimony was never mentioned at any point until the trial court awarded

---

[13] *CML-GA Smyrna, LLC v. Atlanta Real Estate Investments*, *LLC*, 294 Ga. 787, 788 (1) (756 SE2d 504) (2014) (punctuation omitted); *accord Cobb Cty. Sch. Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999).

[14] *CML-GA Smyrna, LLC*, 294 Ga. at 788 (1) (punctuation omitted); *accord Barker*, 271 Ga. at 37 (2).

alimony in its initial divorce decree (based on Joshua's disability compensation), and then did so again in its amended decree, even after acknowledging the error in its initial decree. Consequently, the trial court's alimony award violated Joshua's due-process rights because Tamara never asked for such relief, either prior to or during trial, and, thus, Joshua had no meaningful opportunity to be heard or prepare a defense to that claim.[15] Accordingly, we reverse the trial court's award of alimony.

3. Joshua further contends that the trial court erred by failing to support its deviation from the child-support guidelines with findings of fact. Again, we agree.

_____

[15] *See Harris v. Harris*, 258 Ga. 496, 497 (371 SE2d 399) (1988) (reversing a judgment that granted the parties' house to the petitioner for a divorce when the defendant was not put on notice by the complaint that he would have to defend against the wife's claim to the marital home); *Sedehi v. Chamberlin*, 344 Ga. App. 512, 520-21 (1) (811 SE2d 24) (2018) (physical precedent as to Division 2 only) (holding that because the wife never sought alimony in her pleadings or at trial, husband had no meaningful opportunity to be heard or prepare defense regarding trial court's alimony award at conclusion of divorce proceeding, and thus alimony award violated husband's due-process rights); *see also Lambert v. Gilmer*, 228 Ga. 774, 774-76 (187 SE2d 855) (1972) (holding that an award of alimony to the wife in a divorce judgment was void because the husband had no notice that the issue of alimony would be tried and gave no express or implied consent to litigating that issue at trial); *Pray v. Pray*, 223 Ga. 215, 215-16 (154 SE2d 208) (1967) (finding that in absence of any prayer for alimony in wife's answer in divorce case, wife was not entitled to alimony under her prayer for general relief).

As the Supreme Court of Georgia has explained, the guidelines for computing the amount of child support are "found in OCGA § 19-6-15 and must be considered by any court setting child support."[16] And as OCGA § 19-6-15 (c) (1) provides: "The child support guidelines . . . shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent." Specifically, the guidelines establish a presumptive amount of child support "calculated principally in proportion to the adjusted gross income of each parent."[17] Of course, the presumptive amount of child support calculated under the statutory child support guidelines is not conclusive.[18] But importantly, if the factfinder deviates from the presumptive amount of child support,

> certain specific findings of fact must be set forth in the child support order, including the reasons for the deviation, the amount of child support that would have been required if no deviation had been applied, how the application of the presumptive amount of child support would be unjust or inappropriate considering the relative ability of each parent

---

[16] *Stowell v. Huguenard*, 288 Ga. 628, 628 (706 SE2d 419) (2011) (punctuation omitted); *accord Roberts v. Tharp*, 286 Ga. 579, 580 (1) (690 SE2d 404) (2010).

[17] *Hardman v. Hardman*, 295 Ga. 732, 736 (3) (b) (763 SE2d 861) (2014); *accord Park-Poaps v. Poaps*, 351 Ga. App. 856, 866 (6) (833 SE2d 554) (2019); *see* OCGA § 19-6-15 (b) (outlining process of calculating child support).

[18] *See Hardman*, 295 Ga. at 737 (3) (b); *Park-Poaps*, 351 Ga. App. at 866 (6).

to provide support, and how the best interest of the child who is the subject of the child support determination is served by a deviation from the presumptive amount.[19]

In this case, the trial court awarded Joshua primary custody of the couple's son but split the custodial time fairly evenly, directing that Joshua have the child 54 percent of the time and Tamara 46 percent of time. But after noting the parents' respective incomes, the court determined that neither parent would pay child support without ever stating what the presumptive amount of child support would have been. It then, rather cursorily, claimed that this deviation—from the unstated presumptive amount—was in the best interests of the child because it would allow Tamara to better meet his needs when in her custody. Given these circumstances, we cannot avoid the conclusion that "a remand is necessary due to the lack of necessary findings being actually included in the [Amended Final Judgment and Decree of Divorce]

---

[19] *Moore v. Moore*, 346 Ga. App. 58, 61 (4) (815 SE2d 242) (2018) (punctuation omitted); *see* OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B).

12

here."[20] And accordingly, we vacate the trial court's ruling as to child support and remand the matter with direction that the trial court make the required findings.

4. Finally, Joshua maintains that the trial court erred by, at least partially, basing its child-custody decision on an in-chambers interview with the couple's son, during which neither party was present, despite being unable to provide a transcript of that interview to the parties. Once again, we agree.

Just before the conclusion of the bench trial, the trial court conducted an in-chambers interview with Joshua and Tamara's son, in which only the court reporter was present. And in the portion of both its initial and amended divorce decrees pertaining to custody, the court stated that the child expressed a desire to spend time with both parents but sleep in "his own bed." So, in preparing to file his motion for new trial, Joshua moved to unseal the transcript of the in-chambers interview. But the

---

[20] *Demmons v. Wilson-Demmons*, 293 Ga. 349, 350 (1) (745 SE2d 645) (2013) (punctuation omitted); *accord Moore*, 346 Ga. App. at 62 (4); *see Wallace v. Wallace*, 296 Ga. 307, 310 (1) (766 SE2d 452) (2014) (reversing and remanding because the trial court failed to make the required findings as to why deviation from presumptive amount of child support was appropriate); *Brogdon v. Brogdon*, 290 Ga. 618, 623 (5) (b) (723 SE2d 421) (2012) (explaining that [the statutorily required] written findings must be included in the final child support order if a deviation is made," and that when "any of the required findings are omitted, [appellate courts] have no choice but to reverse the trial court's judgment and remand the case to the trial court for further proceedings).

court issued an order, explaining that the court reporter misplaced her recording of the interview and, thus, could not transcribe it. Consequently, the trial court stated that it was unable to grant Joshua's motion.

The appellate courts of this state have long held that trial courts, in reaching judgments on child custody, "cannot rely on evidence that was not available to the parties or their counsel."[21] And here, in light of the trial court's reference to its interview with the child in its divorce decree, it is apparent that the court relied, at least in part, on evidence that was not available to the parties. Accordingly, we vacate the final custody order in the Amended Final Judgment and Decree of Divorce and remand the case to the trial court with direction to make a custody determination that is not based on evidence unavailable to the parties or counsel or regarding matters which they have not had an opportunity to be heard.[22]

---

[21] *Altman v. Altman*, 301 Ga. 211, 215 (2) (800 SE2d 288) (2017); *see, e.g.*, *Kohler v. Kromer*, 234 Ga. 117, 118-19 (214 SE2d 551) (1975); *Peeples v. Newman*, 209 Ga. 53, 57 (70 SE2d 749) (1952); *Kilgore v. Tiller*, 194 Ga. 527, 528-29 (22 SE2d) 150 (1942); *Osgood v. Dent*, 167 Ga. App. 406, 409-11 (2) (306 SE2d 698) (1983); *see also* Uniform Superior Court Rule 24.5 (permitting consultation by trial courts with the children involved in child custody disputes but stating that "[a]t any such consultation, attorneys for both parties may be in attendance," and that "[u]pon request, the proceedings in chambers shall be recorded").

[22] *See Altman*, 301 Ga. at 215 (2) (vacating child custody order and remanding case for further proceedings because trial court relied on sealed in-chambers

For all these reasons, we reverse the trial court's award of alimony, vacate its ruling as to child support and custody, and remand the case for further proceedings consistent with this opinion.

*Judgment reversed in part; vacated in part; and case remanded. Rickman and Brown, JJ., concur.*

interview with child, which it did not make available to the parties).

15